JOHN BELL, an Infant under Fourteen Years of Age, by JOHN BELL, His Guardian ad Litem, Plaintiff, *v.* MILTON GREENWOOD, Respondent, Impleaded with EXCHANGE TEA & COFFEE, INC., Defendant.

FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Appellant.

Second Department, May 9, 1930.

*Thomas E. White* [*Wallace P. Harvey* with him on the brief], for the appellant.

*Leo J. Curren,* for the respondent.

KAPPER, J. Concurrent actions were brought by John Bell, an infant, and his father against Milton Greenwood for personal injuries suffered by the infant through the alleged negligence of Greenwood and for loss of services sustained by the father. The infant recovered a verdict of $3,000 and the father one for $250. Judgments, with costs added, were entered accordingly on December 9, 1926, against Greenwood. Greenwood was insured against this liability by the Manufacturers' Liability Insurance Company; and that company's policy was the usual one issued by casualty companies, under the terms of which full and complete control over the litigation was reserved by the insurance company and no control or interference therewith was permitted the assured.

Upon the entry of these judgments, the insurance company, instead of paying and discharging the same, sought and obtained from the Fidelity and Deposit Company of Maryland (the appellant here) undertakings on appeal, which, of course, stayed execution against Greenwood, who in turn was entitled to the benefit of the indemnity assured him by the policy. The judgments were subsequently, on June 8, 1927, affirmed by this court (221 App. Div. 753).

The appellant Fidelity Company had an arrangement with Greenwood's insurer, the Manufacturers' Company, to furnish appeal bonds on appeals taken ostensibly by the persons assured but in reality by the Manufacturers' Company, this arrangement being accompanied by collateral deposited with the Fidelity Company by the insurance company; and it clearly appears that judgments entered subsequent to the date of the judgments involved in the present litigation were paid out of said collateral by the

Fidelity Company which plainly and in equity and justice should have been applied to the satisfaction in whole or in part of the judgments now in question.

The appellant Fidelity Company paid the Bell judgments and took an assignment thereof and thereupon demanded of Greenwood that he reimburse the appellant in the amount paid to discharge the said judgments. In this demand, in writing, the Fidelity Company stated that it executed the undertakings on appeal "taken by you to the Appellate Division of the Supreme Court for the Second Department." Greenwood did nothing of the kind. He never directed an appeal, and knew nothing about any such step which plainly was inspired and directed by his insurer, the Manufacturers' Company. So complete was that company's control over the litigation that Greenwood had no knowledge of the entry of the judgment after verdict. In view of the arrangement between the Fidelity Company and the Manufacturers' Company, it needs no discussion to demonstrate that the Fidelity Company knew for whom it had undertaken this service of furnishing appeal bonds, and that Greenwood was wholly out of the picture.

Greenwood applied to the Special Term for an order to have the judgments canceled and discharged of record. The motion was granted, and from the order entered thereon, the Fidelity Company now appeals.

The appellant urges that upon the assignment to it of the Bell judgments it has been subrogated to all the rights which the plaintiffs in the Bell suits possessed under the judgments against Greenwood, the judgment debtor; and it cites the cases establishing the well-settled principle that a surety who pays a debt for his principal is entitled to be put in the place of the creditor and to all the means which the creditor possessed to enforce payment against the principal debtor. No one can gainsay the soundness of the doctrine, but in its broad statement it is not applicable to the facts of this case.

The doctrine of subrogation is of equitable origin and does not rest upon any right acquired by contract but simply upon the equitable principle that substantial justice should be attained regardless of form, so that the person primarily liable should be compelled, ultimately, to pay the debt, even though it require the substitution of one creditor for another in order to accomplish this result; but this doctrine can never be invoked against one whose equities are equal or superior to those of the party seeking to be subrogated. "Subrogation being the creature of equity it will not be permitted where it would work injustice to the rights of those having equal or superior equities." (*Laski* v. *State of New York*, 217 App. Div. 420, 421, quoting from 27 Am. & Eng. Ency. of Law

[2d ed.], p. 204.) "It must not be enforced to the detriment of equal or superior equities existing in other parties." (*Peoples* v. *Peoples Bros.*, 254 Fed. 489, 492.) The qualification of the right of subrogation was thus succinctly stated in *American Surety Co.* v. *Citizens' Nat. Bank* (294 Fed. 609, 616): "The right of subrogation is an equitable right, and where equities are equal the right does not exist and there can be no relief."

At bar, the equities in favor of the respondent Greenwood are superior to those of the appellant. At the time of the rendition of the Bell judgments, the insurer, the Manufacturers' Company, under its policy to indemnify Greenwood, was liable and under the statute (Ins. Law, § 109, added by Laws of 1917, chap. 524, as amd. by Laws of 1924, chap. 639) was subjected to make direct payment of the judgments in the event of non-payment by Greenwood. At that time it was solvent. Since the rendition of the judgments the Manufacturers' Company has become insolvent. It was the act of the appellant in furnishing the undertakings on appeal which stayed the execution of the Bell judgments and prevented the insurer's liability to Greenwood from being then and there realized upon. And the appellant gave these undertakings for an apparently valuable consideration moving to it. Thus a delay brought about by the appellant for its profit operated to the manifest loss of Greenwood. Between parties thus situated, the primary liability should rest upon those who intervene to procure the delay. (*Hinckley* v. *Kreitz*, 58 N. Y. 583, 590.) Requiring this appellant to pay what it agreed to do, namely, the Bell judgments, and leaving it in that situation without recourse to Greenwood, involves no injustice when its equities are so obviously subordinate to those of Greenwood, the original debtor.

The position of the appellant is the same toward Greenwood as though the Manufacturers' Company were Greenwood's surety, which in legal effect it was, and in such a case we have an ultimate surety obligated to assure the debt of a primary surety. The principle was stated as long ago as 1830, in *New York State Bank* v. *Fletcher* (5 Wend. 85), thus: "A *surety*, who pays the debt of his principal, is entitled to be substituted in the place of the creditor, as to all the means possessed by him to enforce payment against the principal debtor; but the *surety of a surety*, though compelled to pay the creditor, is not entitled to be substituted in the place of such creditor for the purpose of enforcing the payment against the principal debtor, if such debtor has paid his *immediate* surety."

Applying the language just quoted to the case before us, we clearly have Greenwood discharged of his obligation by his contract of

insurance with the Manufacturers' Company which was in legal effect his "immediate surety." This, therefore, deprives the appellant of the right to collect the judgments against Greenwood.

The appellant further urges that the Manufacturers' Company in procuring the appellant's undertakings on appeal was Greenwood's agent which bound him as principal to its act of agency. As has already been stated, Greenwood had nothing to do with this situation. He was helpless and powerless in the matter. The question of such steps constituting the relation of principal and agent between the debtor and his indemnitor was answered in the negative by the First Department of this court in *City Trust, S. D. & S. Co.* v. *Haaslocher* (101 App. Div. 415, 420). In that case a brewing company was found liable on a judgment for damages for personal injuries. It had insurance in an indemnity fund association which controlled the litigation. The City Trust Company furnished the undertaking on appeal, and in the action under consideration (in the case cited) it sought a recovery from the indemnity association. The court (pp. 420, 421) say: " The indemnity association was on the 7th day of April, 1897, liable to pay the judgment that had been obtained against the brewing company. It had recognized its obligation by undertaking the defense of the action against the brewing company; employing counsel to try the case and when defeated upon the trial by appealing from the judgment. Upon the entry of the judgment against the brewing company the indemnity association became bound to pay that judgment, and to secure a stay of the proceedings to enforce the judgment which it would have been obliged to pay, it requested the brewing company to apply for and obtain from the plaintiff an undertaking. But for this undertaking the plaintiff in the suit against the brewing company would have been entitled to enforce the judgment which, under its contract, the indemnity association would have been bound to pay. The plaintiff's position upon these facts was strictly that of a surety who occupied that position at the request and special instance of the indemnity association to protect it from the enforcement of the judgment for which it was liable pending the appeal. The giving of the undertaking by the plaintiff was directly for the benefit of the indemnity association and was issued at its request and special instance. * * * It is alleged that it [The City Trust Company] executed the undertaking at the request and special instance of the indemnity association, and whether that request was directly to the plaintiff or to the plaintiff through the principal debtor, the brewing company, seems to me to be immaterial. The undertaking was in fact executed for the benefit of the indemnity association and at its request and special instance. If the plaintiff

had been compelled to pay the whole amount of this judgment the indemnity association would have been liable to repay to the plaintiff the amount that it had paid to discharge the judgment." The order appealed from awards respondent " the same costs as are allowed in an action." There was involved here only a motion on behalf of the respondent, upon affidavits, to have the county clerk directed to cancel the Bell judgments. Costs as in an action were not justified. Motion costs alone should have been granted. The order, therefore, should be modified by striking out the provision awarding costs " as are allowed in an action " and substituting in lieu thereof " ten dollars as costs of motion," and so as modified the order should be affirmed, without costs.

LAZANSKY, P. J., RICH, HAGARTY and SCUDDER, JJ., concur.

Order directing county clerk to mark certain judgments satisfied, canceled and discharged of record, modified by striking out the provision awarding costs " as are allowed in an action " and substituting in lieu thereof " ten dollars as costs of motion," and as so modified affirmed, without costs.