*369
 
 OPINION OF THE COURT
 

 Hancock, Jr., J.
 

 Plaintiff, a fidelity insurer, paid its insured for a loss caused by the defalcations of an employee. Thereafter, it sued defendant, its insured’s accountant and auditor, to recover what it had paid, alleging that defendant was negligent in failing to discover the defalcations. This appeal is from an order affirming summary judgment against plaintiff and dismissing its action.
 

 The decisive question is whether plaintiff’s rights to recover as equitable subrogee to the extent of its payment to its insured are barred as a matter of law, as defendant contends, either because plaintiff did not reimburse its insured for the full amount of the loss or because of the operation of the doctrine of superior equities. For reasons which follow, we reject the contention that plaintiff’s equitable rights are barred. Accordingly, the order of the Appellate Division should be reversed and summary judgment denied.
 

 I
 

 Between 1975 and 1983, Albert Ferrarese, an employee of Benton & Bowles (B&B), embezzled approximately $4,000,000 by manipulating the books of account and creating nonexistent receivables. Defendant — B&B’s auditor which prepared financial statements for the years 1980, 1981, and 1982 — was allegedly negligent in failing to uncover the fictitious receivables and permitting them to be reflected in B&B’s balance
 
 *370
 
 sheet. After discovery of Ferrarese’s defalcations, defendant and B&B on May 2, 1983 entered into a "Settlement Agreement and Release” under which each party released the other from any claims arising out of or connected with the fictitious receivables. As part of the settlement, defendant agreed to perform $900,000 worth of professional services for B&B. The agreement also contained the following provision: "It is further understood and agreed that this release shall not diminish, compromise, prejudice or otherwise affect in any way any rights of one party to this agreement against the other to which a
 
 third party may he subrogated by virtue of any insurance policy or otherwise”
 
 (emphasis added).
 

 On February 13, 1985 plaintiff paid B&B $1,000,000 for the loss — the policy limit under its contract. In the "Release, Assignment and Subrogation Agreement” accompanying the payment, plaintiff and B&B each reserved its rights to seek reimbursement from Ferrarese or from any other person or firms responsible for the loss; B&B agreed that it did "hereby subrogate, assign, transfer and set unto [plaintiff] all the rights, claims, interest and causes of action it ha[d] against [defendant] up to the amount paid by [plaintiff] to [B&B]”; and B&B promised to cooperate with plaintiff in its efforts to seek reimbursement from defendant and to retain and produce at plaintiff’s request all correspondence, books and other documents pertaining to the loss. In addition, plaintiff and B&B, agreed as follows: "It is further understood that any of the aforesaid rights that [plaintiff] has against [defendant] have not been prejudiced or impaired in any way by any agreements entered into between [B&B] and [defendant]”.
 

 In granting defendant’s motion for summary judgment and dismissing plaintiff’s amended complaint, Supreme Court rejected plaintiff’s contention that its agreement with its insured, B&B, gave it the right to sue defendant as B&B’s contractual subrogee. The court construed the writing between B&B and plaintiff not as an agreement effecting a contractual subrogation but rather as one purporting to assign to plaintiff whatever claims B&B had against defendant. Because B&B had released defendant in the May 2, 1983 agreement, Supreme Court reasoned that B&B had no rights to assign to plaintiff on February 13, 1985 when it attempted to do so. Thus, the court concluded that the February 13, 1985 agreement gave plaintiff no rights either as contractual subrogee or assignee.
 

 
 *371
 
 Supreme Court also rejected plaintiff’s alternative theory that, however the February 13, 1985 agreement might be construed, plaintiff should be permitted to advance a claim for reimbursement as equitable subrogee. The court, citing
 
 Mc-Grath v Carnegie Trust Co.
 
 (221 NY 92) and
 
 American Sur. Co. v Gerold
 
 (255 App Div 285,
 
 rearg denied
 
 255 App Div 950), stated that "it is basic to the existence of subrogation that the proposed subrogee pay the debt owed by the debtor to the creditor,
 
 in full. ”
 
 (Emphasis added.) Noting that plaintiff had made only a partial payment, the court held that even when "the partial payment represents the full extent of the duty owed by the proposed subrogee to the creditor, [it] will not result in subrogation”.
 

 In view of its holding that plaintiff’s failure to make payment for the full loss to B&B barred its claim for equitable subrogation, Supreme Court found it unnecessary to determine whether plaintiff’s rights as equitable subrogee were also barred by application of the doctrine of superior equities. Supreme Court, however, did reject plaintiff’s contention that the doctrine of superior equities does not exist in New York. The Appellate Division unanimously affirmed the summary judgment and dismissal for the reasons stated at Supreme Court.
 

 II
 

 Any rights which plaintiff, as B&B’s insurer, has as equitable subrogee accrued to it not by virtue of some agreement with B&B, but independently of any contractual provision upon payment of the loss under its policy. Thus, if we hold that plaintiff may properly make a claim as B&B’s equitable subrogee, as we do, it becomes unnecessary to determine whether plaintiff also has a valid claim as contractual subrogee under the February 13, 1985 agreement with B&B. It would make no difference whether in the February 13, 1985 writing plaintiff and B&B intended a contractual subrogation of B&B’s rights against defendant or, as the courts below viewed it, an effort, albeit unsuccessful, to assign B&B’s rights, as long as there is no language in the agreement with B&B which could be construed as barring plaintiff’s claim as equitable subrogee. There is no such language.
 

 Moreover, the May 2, 1983 "Settlement Agreement and Release” between B&B and defendant expressly exempted from the release any subrogation rights of an insurance
 
 *372
 
 company, and B&B unequivocally represented in its February 13, 1985 agreement with plaintiff that its prior release of defendant had not impaired or prejudiced whatever subrogation rights plaintiff might have. Under these writings plaintiff’s rights to proceed against defendant as equitable subrogee were clearly preserved
 
 (see, Connecticut Fire Ins. Co. v Erie Ry. Co.,
 
 73 NY 399, 404-405;
 
 Point Tennis Co. v Irvin Indus. Corp.,
 
 63 AD2d 967;
 
 see also, Weinberg v Transamerica Ins. Co.,
 
 62 NY2d 379, 383-384). We turn to a discussion of these rights.
 

 Ill
 

 Unlike contractual subrogation where the subrogee’s rights are defined in an express agreement between the insurersubrogee and the insured-subrogor, the rights of an insurer against a third party as equitable subrogee arise independently of any agreement
 
 (see, American Sur. Co. v Palmer,
 
 240 NY 63, 67;
 
 New York Bd. of Fire Underwriters v Trans Urban Constr. Co.,
 
 91 AD2d 115, 119-120,
 
 affd
 
 60 NY2d 912; 16 Couch, Insurance 2d § 61:46
 
 et seq.).
 
 These rights accrue upon payment of the loss and are based upon the principle that in equity an insurer, which has been compelled under its policy to pay a loss, ought in fairness to be reimbursed by the party which caused the loss
 
 (see, Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp.,
 
 240 NY 37, 47;
 
 Pittsburgh-Westmoreland Coal Co. v Kerr,
 
 220 NY 137, 143-144;
 
 National Sur. Co. v National City Bank,
 
 184 App Div 771, 773-774). The rights of an insurer as equitable subrogee against a third party are derivative and limited to such rights as the insured "would have had against such third party for its default or wrongdoing.”
 
 (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp., supra,
 
 at 47.) Thus, the insurer can only recover if the insured could have recovered and its claim as subrogee is subject to whatever defenses the third party might have asserted against its insured
 
 (see, American Sur. Co. v Town of Islip,
 
 268 App Div 92, 94; 11A Appleman, Insurance Law & Practice § 6551, at 3-9;
 
 see generally,
 
 16 Couch, Insurance 2d § 61:285, at 326).
 

 In New York, rights of insurers to recover as equitable subrogees against negligent third parties have been recognized in cases where the insurer has paid an automobile collision loss
 
 (see, e.g., Hamilton Fire Ins. Co. v Greger,
 
 246 NY 162, 166-167), a fire loss
 
 (see, e.g., Connecticut Fire Ins. Co. v Erie
 
 
 *373
 

 Ry. Co.,
 
 73 NY 399,
 
 supra; Tishman Co. v Carney & Del Guidice,
 
 36 AD2d 273,
 
 affd
 
 34 NY2d 941) and a loss under a marine insurance policy
 
 (Phoenix Ins. Co. v Parsons,
 
 129 NY 86, 94). Similarly, fidelity insurers have been permitted to proceed as equitable subrogees where banks have negligently caused or contributed to the loss
 
 (see, Fidelity & Deposit Co. v Queens County Trust Co.,
 
 226 NY 225, 233;
 
 Federal Ins. Co. v Groveland State Bank,
 
 44 AD2d 182,
 
 mod on other grounds
 
 37 NY2d 252,
 
 rearg denied
 
 37 NY2d 924;
 
 National Sur. Co. v National City Bank, supra,
 
 at 773-774).
 

 While our court has not considered the precise question of whether the fidelity insurer of an employer may proceed as subrogee against public accountants who negligently fail to discover an employee’s defalcations, other courts have held that such an insurer may do so
 
 (see, e.g., National Sur. Corp. v Lybrand,
 
 256 App Div 226;
 
 Maryland Cas. Co. v Cook,
 
 35 F Supp 160 [ED Mich 1940];
 
 Liberty Mut. Ins. Co. v Harris, Kerr, Forster & Co.,
 
 89 Cal Rpt 437, 10 Cal App 3d 1100 [2d Dist Ct App 1970];
 
 Western Sur. Co. v Loy,
 
 3 Kan App 2d 310, 594 P2d 257 [Ct App Kan 1979];
 
 Dantzler Lbr. & Export Co. v Columbia Cas. Co.,
 
 115 Fla 541, 156 So 116 [1934];
 
 see,
 
 11A Appleman, Insurance Law & Practice § 6563, at 52; 16 Couch, Insurance 2d § 61:294, at 331-332;
 
 cf., Fidelity & Deposit Co. v Atherton,
 
 47 NM 443, 144 P2d 157).
 

 We have held that "the principle of subrogation ought to be liberally applied to the protection of those who are its natural beneficiaries.”
 
 (Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp.,
 
 240 NY 37, 47,
 
 supra).
 
 There would seem to be no reason why the principle should apply any differently when the loss is due to the negligence of accountants than when it has been caused, for example, by the negligence of a bank
 
 (see, Fidelity & Deposit Co. v Queens County Trust Co., supra; Federal Ins. Co. v Groveland State Bank, supra; National Sur. Co. v National City Bank, supra,
 
 at 773). If general principles of subrogation are applied, the fidelity insurer should be permitted to proceed as equitable subrogee when it has been compelled under its policy to pay a loss and when it can establish that the loss was caused by the negligent conduct of its insured’s public accountants for which the insured could have recovered
 
 (see, Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp., supra,
 
 at 47-48;
 
 Standard Acc. Ins. Co. v Pellecchia,
 
 15 NJ 162, 104 A2d 288, 292-293 [1954]; 11 Appleman, Insurance Law & Practice §§ 6501, 6502, 6503, at 431, 434, 440; Note,
 
 Subrogation of the Insurer
 
 
 *374
 

 to Collateral Rights of the Insured,
 
 28 Colum L Rev 202; King,
 
 Subrogation Under Contracts Insuring Property,
 
 30 Tex L Rev 62). Defendant argues, however, that these general principles should not apply in the circumstances here.
 

 IV
 

 Defendant contends first that there should be a legal bar to equitable subrogation because plaintiff has reimbursed its insured for only a part of the loss, not all of it. Defendant cites cases dealing with the rights of sureties and creditors
 
 (see, e.g., Hanlon v Union Bank,
 
 247 NY 389, 390;
 
 McGrath v Carnegie Trust Co.,
 
 221 NY 92,
 
 supra;
 
 23 NY Jur 2d, Contribution, Indemnity and Subrogation, § 30 [and cases cited]) holding that in order to be equitably subrogated to the claim of a creditor with respect to another’s obligation, a person must have completely discharged the obligation and that a "creditor may not be required to surrender any part of his collateral till payment has been made in full”
 
 (McGrath v Carnegie Trust Co., supra,
 
 at 95).
 

 The theory underlying these rules is simply that subrogation to the rights of the creditor should in no way impair the creditor’s interest in the security for the debt or its right to proceed against the debtor. When the debt is paid in full the creditor no longer has an interest in pursuing the debtor or resorting to the collateral. Until it is paid, however, it is entitled to exclusive possession of the collateral and control of the debt and the remedies for its enforcement
 
 (see, American Sur. Co. v Gerold,
 
 255 App Div 285, 287,
 
 supra; New Jersey Equities Co. v Mandel,
 
 178 Misc 783, 787; Restatement of Security § 141, comment e, at 387).
 

 Neither the rules requiring full payment of the debt nor their underlying rationale fit the case of an insurer which, like plaintiff, has paid part of the loss to its insured and seeks to recoup only what it has paid from the alleged wrongdoer. Permitting the insurer to sue for that amount as equitable subrogee does not affect the insured’s right to sue for the amount of the loss remaining unreimbursed. Thus, the general rule is that an insurer which has paid part of a loss may proceed
 
 pro tanto
 
 against a third person whose negligence or wrongful act caused the loss
 
 (see, Hamilton Fire Ins. Co. v Greger,
 
 246 NY 162, 166, 168,
 
 supra; Connecticut Fire Ins. Co. v Erie Ry. Co.,
 
 73 NY 399,
 
 supra; Aetna Cas. & Sur. Co. v McCullough,
 
 41 AD2d 161, 163;
 
 Galante v Hathaway Bakeries,
 
 
 *375
 
 6 AD2d 142, 149; 6A Appleman, Insurance Law & Practice § 4054;
 
 see also, Aetna Cas. & Sur. Co. v Bekins Van Lines Co.,
 
 67 NY2d 901).
 

 It is not suggested that applying the general rule in this case and permitting plaintiff to be subrogated to the extent of the $1,000,000 payment to B&B could work to B&B’s detriment. B&B cannot claim that permitting subrogation will prejudice its rights, since it has already pursued and settled its claim against defendant. Thus, the case of
 
 American Sur. Co. v Gerold
 
 (255 App Div 285,
 
 supra),
 
 relied upon by defendant, is readily distinguished. There, denial of the insurer’s claimed right to proceed as subrogee upon the ground that it had not paid the insured for the full extent of the loss prevented an injustice to the insured. Unlike plaintiff here, the insured had not pursued its remedy against the third party; it would have been deprived of its right to do so, had subrogation been permitted.
 

 Finally, defendant contends that it should be insulated from any liability to plaintiff by the doctrine of superior equities. The rule that the right of subrogation should not be invoked against one whose equities are equal or superior to those of the party seeking to be subrogated has been applied in cases in our State involving rights of creditors where obligations are secured by surety bonds or mortgages
 
 (see, e.g., Seely’s Son v Fulton-Edison, Inc.,
 
 52 AD2d 575 [mortgage foreclosure action];
 
 Laski v State of New York,
 
 217 App Div 420 [claimed subrogation rights under surety bond];
 
 New Jersey Equities Co. v Mandel,
 
 178 Misc 783, 786,
 
 supra
 
 [same];
 
 Bell v Greenwood,
 
 229 App Div 550, 552-553 [subrogation under appeal bond]). In each of these cases subrogation would have diminished or in some way prejudiced the rights or remedies that the creditor or obligee would otherwise have had in connection with the underlying obligation.
 

 While the doctrine of superior equities is sometimes alluded to in the context of an insurer’s claim to subrogation rights
 
 (see, e.g., Murphy v Aetna Ins. Co.,
 
 96 AD2d 99, 102;
 
 see generally, Standard Acc. Ins. Co. v Pellecchia,
 
 15 NJ 162, 104 A2d 288, 292-293, 296-299,
 
 supra;
 
 Comment,
 
 Nature and Extent of Subrogation Rights of Fidelity Insurers Against Officers and Directors of Financial Institutions,
 
 47 U Pitt L Rev 727, 735-737), there are numerous cases in New York upholding the subrogation rights of insurers where the doctrine is never mentioned
 
 (see, e.g., Hamilton Fire Ins. Co. v Greger,
 
 246 NY
 
 *376
 
 162,
 
 supra; Fidelity & Deposit Co. v Queens County Trust Co.,
 
 226 NY 225, 233,
 
 supra; Connecticut Fire Ins. Co. v Erie Ry. Co.,
 
 73 NY 399,
 
 supra; Federal Ins. Co. v Groveland State Bank,
 
 44 AD2d 182,
 
 supra; Tishman Co. v Carney & Del Guidice,
 
 36 AD2d 273,
 
 affd
 
 34 NY2d 941,
 
 supra; National Sur. Co. v National City Bank,
 
 184 App Div 771,
 
 supra).
 

 Analysis of the New York cases where the doctrine of superior equities has been discussed leads to the conclusion that, in essence, it is an application of the established principle that subrogation is designed "to dispense equity and justice among the parties”
 
 (Seely’s Son v Fulton-Edison, Inc., supra,
 
 at 578) and should not be permitted where that result will not be achieved
 
 (see, Ocean Acc. & Guar. Corp. v Hooker Electrochemical Corp.,
 
 240 NY 37, 47,
 
 supra; see generally,
 
 11 Appleman, Insurance Law & Practice § 6502). As noted, there is no basis here for a holding that the insured’s or obligee’s rights would in any way be diminished by subrogation
 
 (contrast, Bell v Greenwood,
 
 229 App Div 550,
 
 supra).
 
 Nor could subrogation affect defendant’s position, since it can assert whatever rights or defenses it has against B&B’s claim in defense of plaintiff’s claim as B&B’s subrogee.
 

 Defendant would, nevertheless, have us hold, as a matter of law, that as between it and plaintiff, its equities are superior and that, therefore, plaintiff’s claim should be dismissed. Defendant argues that, although plaintiff as the insurer has not benefited from the loss and is charged with no wrongdoing, the fact that plaintiff is a compensated insurer puts it in an inferior position in equity to defendant — an allegedly negligent wrongdoer. This court has not applied such a rule
 
 (see, e.g., Hamilton Fire Ins. Co. v Greger,
 
 246 NY 162,
 
 supra; Fidelity & Deposit Co. v Queens County Trust Co.,
 
 226 NY 225,
 
 supra; but see, Hartford Acc. & Indem. Co. v Peat, Marwick, Mitchell & Co.,
 
 129 Misc 2d 990, 991,
 
 affd
 
 123 AD2d 903). While other courts have given some weight to the fact that the party seeking subrogation is a paid surety or insurer where subrogation is sought against an innocent third party
 
 (see, e.g., Meyers v Bank of Am. Natl. Trust & Sav. Assn., 11
 
 Cal 2d 92, 77 P2d 1084, 1093 [1938];
 
 Fidelity & Deposit Co. v De Strajman,
 
 29 Cal Rptr 855, 215 Cal App 2d 10 [Cal App 1st Dist 1963]; 11A Appleman, Insurance Law & Practice § 6551, at 4), that fact has not precluded subrogation where the third party was
 
 negligent (see, e.g., Fidelity & Deposit Co. v Oklahoma State Bank,
 
 77 F2d 734 [10th Cir],
 
 cert denied
 
 296 US 611;
 
 Federal Deposit Ins. Corp. v National Sur. Corp.,
 
 434 F
 
 *377
 
 Supp 61 [ED NY];
 
 Western Sur. Co. v Loy,
 
 3 Kan App 2d 310, 594 P2d 257,
 
 supra).
 

 It is difficult to see the merit of the rule that defendant proposes in the case of a fidelity insurer seeking subrogation against an allegedly negligent public accountant: viz., that because the risk assumed includes the specific risk that the defalcation may be caused by the insured’s accountant’s negligence in making an audit and because the fidelity insurer has received premiums for this risk, it should lose its right as the insured’s equitable subrogee. While arguably a compensated insurer or surety should in fairness bear the loss where the third party’s liability is solely contractual and not based on fault
 
 (see, Meyers v Bank of Am. Natl. Trust & Sav. Assn., supra; see generally, Standard Acc. Ins. Co. v Pellecchia,
 
 15 NJ 162, 104 A2d 288, 293-303,
 
 supra; but see, National Sur. Co. v National City Bank,
 
 184 App Div 771,
 
 supra; Liberty Mut. Ins. Co. v First Natl. Bank,
 
 151 Tex 12, 245 SW2d 237 [1951]), such a result seems neither fair nor judicious when the loss has been caused by the third party’s tortious conduct.
 

 Defendant contends, however, that the doctrine of superior equities calls for a denial of subrogation by a fidelity insurer in a case of this kind because of the particular nature of the obligations of an accountant and auditor and the inherent limitations in detecting errors or irregularities through the auditing process
 
 (see,
 
 Matson,
 
 Subrogation Claims Against Auditors: What is "The Purest Equity?",
 
 6 Ohio NU L Rev 313 [advocating a rule that the auditor or accountant should not be liable to the fidelity insurer absent some proof of "participation” in the defalcations]). Such contentions pertain to causation and to the claimed breach of the duties owed by the public accountant to the insured and involve factual questions for the trial court in determining whether the fidelity insurer should recover as equitable subrogee.
 

 Assuming for the sake of argument that defendant’s negligence in failing to discover Ferrarese’s defalcations caused the loss, defendant could have been held directly liable to B&B in a suit brought by it. The rule defendant urges here would allow it to escape this liability simply because the victim, B&B, carried fidelity insurance. In effect, defendant seeks to avail itself of B&B’s fidelity insurance as its own liability policy without paying for it. Such a rule would be contrary to precedent
 
 (see, e.g., Federal & Deposit Co. v Queens County Trust Co.,
 
 226 NY 225,
 
 supra)
 
 and we see no reason in
 
 *378
 
 policy or fairness for adopting it. Moreover, it would conflict with the basic notion of subrogation as the " 'mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it.’ ”
 
 (Arnold v Green,
 
 116 NY 566, 571-572).
 

 The order of the Appellate Division should be reversed, with costs, and the motion for summary judgment denied.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Bellacosa concur.
 

 Order reversed, etc.