■ WILLIAM PEP'E et al., Respondents, v GLENN C. MC-CARTHY et al., Respondents, FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, Appellant, et al., Defendants. (Action No. 1.) ARBOR NATIONAL MORTGAGE, INC., Formerly Known as AMERICAN MORTGAGE BANKING, LTD., Respondent, v GLENN C. MCCARTHY et al., Respondents, FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, Appellant, et al., Defendants. (Action No. 2.) [672 NYS2d 350] —In related actions to foreclose mortgages on real property, the defendant First Indemnity of America Insurance Company appeals from so much of a judgment of the Supreme Court, Westchester County (Wood, J.), entered November 30, 1993, as, upon confirming a Referee's report which, *inter alia*, found that the amount due on the mortgage held by Arbor National Mortgage, Inc., formerly known as American Mortgage Banking, Ltd., should be reduced by $750,000, awarded, *inter alia*, the sum of $3,227,485.41 on that mortgage.

Ordered that the judgment is modified, on the law, by deleting from the third decretal paragraph thereof the provision awarding Arbor National Mortgage, Inc., the sum of $3,227,485.41, and substituting therefor a provision awarding the plaintiff Arbor National Mortgage, Inc., the sum of $3,977,485.41; as so modified, the judgment is affirmed insofar as appealed from, with costs to the appellant.

In or about June 1990, the plaintiff in Action No. 2, Arbor National Mortgage, Inc., formerly known as American Mortgage Banking, Ltd. (hereinafter Arbor), commenced this action to foreclose a mortgage in the amount of $3,000,000 executed by the defendant Glenn C. McCarthy. Arbor's mortgage was secured in part by a surety bond in the amount of $750,000, obtained by McCarthy and issued by Galaxy Insurance Company (hereinafter Galaxy). Galaxy reinsured the bond with the appellant, First Indemnity of America Insurance Company (hereinafter FIA). Upon McCarthy's default, FIA paid Arbor $750,000 under the bond.

Arbor was granted summary judgment in the foreclosure action and the matter was referred to a Referee, who determined

that the principal sum due on the mortgage was reduced by the payment of $750,000, and that therefore the principal sum due on the mortgage was now $2,250,000, and that the total amount due was $3,227,485.41. Arbor then moved to confirm the Referee's report and for leave to enter a judgment of foreclosure and sale. The Supreme Court granted Arbor's motion.

The Supreme Court improperly determined that because Arbor's debt was secured by a $750,000 bond which was paid, the principal amount owed by McCarthy on the first mortgage was reduced by $750,000. It is well settled that a surety paying on a bond at the behest of a creditor is entitled by operation of law to be subrogated to the rights and remedies available to the creditor for enforcement of the debtor's obligation (*see, Romano v Key Bank*, 90 AD2d 679, 680; *Carrols Equities Corp. v Villnave*, 57 AD2d 1044; 63 NY Jur 2d, Guaranty and Suretyship, §§ 428, 440). "A subrogated claim is not in any way diminished or extinguished by the subrogation. It is merely 'taken over' by another who stands in the place of the original claimant" (*Thomas Goodfellow, Inc. v Lyons Trans. Lines*, 127 Misc 2d 651, 652). Thus, FIA's payment of $750,000 did not in any way reduce the principal amount that McCarthy owed on the first mortgage; the only change is in the allocation of payment. Denying subrogation rights to FIA would elevate the secondary mortgage lien of the defendants William Pep'e and John Fareri, which they had agreed would be subordinate to Arbor's lien (*see, Dietrich Indus. v United States*, 988 F2d 568), while the subrogation of FIA to the extent of its $750,000 payment on the bond on the first mortgage does not place Pep'e and Fareri in any worse position than they had occupied before payment on the bond (*see, Dietrich Indus. v United States, supra*, at 573 [recognizing that subrogation would not alter the junior lienholder's position]). They are still subordinate to the lien of the first mortgage, and their position as secondary mortgagees is in no way prejudiced.

Pep'e and Fareri, however, contend that FIA's failure to pay McCarthy's entire debt to Arbor prevents it from becoming subrogated to Arbor's rights. We disagree. As a general rule, in order to be equitably subrogated to the rights of a creditor with respect to another's obligation, one must have completely discharged the obligation (*see, Federal Ins. Co. v Andersen & Co.*, 75 NY2d 366, 374; 63 NY Jur 2d, Guaranty and Suretyship, § 436). This rule, however, acts to protect the senior lienholder, here Arbor, whose rights are being subrogated (*see, Federal Ins. Co. v Andersen & Co., supra*, at 374; *Dietrich Indus. v United States, supra*, at 572). The rationale underlying

the rule is that equitable subrogation should not impair the senior lienholder's right to proceed against the debtor to recover the entire indebtedness secured by the senior lien (*see, Federal Ins. Co. v Andersen & Co., supra*, at 374). Thus, the fact that FIA has not paid McCarthy's entire indebtedness to Arbor, the senior lienholder, is not a matter about which Pep'e and Fareri, as junior lienholders, can complain (*see, Dietrich Indus. v United States, supra*, at 572-573). Moreover, Arbor makes no argument on appeal that permitting FIA to be subrogated to the extent of its $750,000 payment would in any way work to its detriment.

Accordingly, the principal amount due from McCarthy on the first mortgage is $3,000,000, but FIA is entitled to be equitably subrogated to Arbor's rights as senior lienholder to the extent of its $750,000 payment under the bond. Upon foreclosure, the proceeds should be used to satisfy both Arbor's and FIA's claims before being used to satisfy Pep'e and Fareri's secondary claim. O'Brien, J. P., Ritter, Krausman and Florio, JJ., concur.