**THE NATIONAL ASBESTOS WORKERS MEDICAL FUND, et al.,
Plaintiffs,**

v.

**PHILIP MORRIS, INC.,
et al., Defendants.**

**Blue Cross and Blue Shield of New Jersey, Inc., et al., Plaintiffs,**

v.

**Philip Morris, Incorporated,
et al., Defendants.**

**Nos. 98 CV 1492, 98 CV 3287.**

United States District Court,
E.D. New York.

Aug. 2, 1999.

Donald J. Capuano, James R. O'Connell, O'Donoghue & O'Donoghue, Washington, DC, Mary Beth Harmon, Law Offices of Peter G. Angelos, New York City, Kenneth David Pack, H. Russell Smouse, John C.M. Angelos, Peter G. Angelos, R. Bruce McElhone, E. David Hoskins, Law Offices of Peter G. Angelos, P.C., Baltimore, MD, for National Asbestos Workers Medical Fund, National Automatic Sprinkler Industry Welfare Fund, National Elevator Industry Health Benefit Plan, Washington ARE Carpenters' Health and Welfare Trust Fund, Iron Workers Local Union No. 16 Health Fund, Plumbers Local No. 1 Industry Bd. Welfare Trust Fund and UA Local 38 Health and Welfare Trust Fund.

Melvyn I. Weiss, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., New York City, for Painters Dist. Counsel No. 58 Health and Welfare Fund.

Barbara Robbins, Steven M. Barna, Wachtell, Lipton, Rosen & Katz, New York City, Robert McCarter, Arnold & Porter, Washington, DC, Paul F. Stecker, Phillips, Lytle, Hitchcock, Blaine & Huber, L.L.P., Buffalo, NY, Jeffrey M. Wagner, Thomas J. Frederick, Dan K. Webb, Jerome W. Pope, Winston & Strawn, Chicago, IL, Ben M. Germana, Wachtell Lipton Rosen & Katz, New York City, Paul F. Jones, Phillips, Lytle, Hitchcock, Blaine & Huber, L.L.P., Buffalo, NY, Peter C. Hein, Wachtell, Lipton, Rosen & Katz, New York City, Kenneth N. Bass, Kirkland & Ellis, New York City, Stephen R. Blacklocks, Wachtell, Lipton, Rosen & Katz, New York City, Thomas John Quigley, Winston & Strawn, New York City, Murray R. Garnick, Arnold & Porter, Washington, DC, for Philip Morris Inc. and Philip Morris Companies, Inc.

Alan E. Kraus, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, Keith W. Vaughan, Robert D. Burton, Thomas Schroeder, Womble, Carlyle, Sandridge & Rice, P.L.L.C., Winston-Salem, NC, Kenneth N. Bass, Kirkland & Ellis, New York City, for Reynolds Tobacco Co. and RJR Nabisco, Inc.

Peter A. Bellocasa, Kirkland & Ellis, New York City, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, Marjorie Press Lindblom, Jennifer G. Gardner, Kirkland & Ellis, New York City, for Brown & Williamson Tobacco Corp., Batus Holdings Inc. and American Brands, Inc.

Donald I. Strauber, David A. Wallace, Chadbourne & Parke, LLP, New York City, Kenneth N. Bass, Kirkland & Ellis,

Washington, DC, for British American Tobacco Co.

Joseph M. McLaughlin, Simpson, Thacher & Bartlett, New York City, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, for B.A.Y. Industries P.L.C.

Gary Long, Shannon L. Spangler, William L. Allinder, Donald J. Kemna, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, Alan Mansfield, Greenberg Traurig, New York City, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, for Lorillard Tobacco Co. and Loews Corp.

Michael Matthew Fay, Aaron H. Marks, Nancy E. Struab, Kasowitz, Benson, Torres & Friedman, LLP, New York City, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, for Liggett Group Inc., Liggett & Myers, Inc. and Brooke Group, Ltd.,

Bruce M. Ginsberg, Kenneth N. Bass, Kirkland & Ellis, New York City, Davis & Gilbert, New York City, for Hill & Knowlton, Inc.

Anne E. Cohen, Debevoise & Plimpton, Harry Zirlin, New York City, for Council for Tobacco Research USA Inc.

Anne E. Cohen, Debevoise & Plimpton, New York City, Anthony R. Mansfield, Seward & Kissel, New York City, Kenneth N. Bass, Kirkland & Ellis, Washington, DC, for Tobacco Institute, Inc.

## PRELIMINARY MEMORANDUM AND ORDER

WEINSTEIN, Senior District Judge.

Defendants' motions to dismiss the complaints in these two cases are denied. A more extensive memorandum will follow this preliminary memorandum and order as soon as work permits. *See* 74 F.Supp.2d 221 (E.D.N.Y.1999).

## I. FACTS

### A. Plaintiffs' Original Claims

These two cases involve claims by medical providers to be compensated for the economic injuries they have allegedly sustained as a result of the treatment of tobacco related illnesses. In both cases the defendants are the major tobacco manufacturers and related entities.

In *Blue Cross & Blue Shield of New Jersey, Inc., et al. v. Philip Morris, Inc., et al.* (*"Blue Cross"*), the plaintiffs are medical provider Blue Cross plans ("The Blues") who allege violations of both federal and state law. The federal causes of action are brought under the Racketeer Influenced and Corrupt Organizations Act (RICO) and the antitrust statutes. The pendent state law claims are asserted under various state statutes and under common law theories of fraudulent misrepresentation, fraudulent concealment, breach of special duty, unjust enrichment, and conspiracy.

In *National Asbestos Workers Medical Fund, et al. v. Philip Morris, Inc., et al.* ("National Asbestos"), the plaintiffs are self-insured ERISA trust funds which provide health care benefits to union workers in the building trades. The plaintiffs state claims under federal RICO and under federal common law on theories of unjust enrichment, restitution, indemnity, and breach of assumed duty.

The plaintiffs' original allegations are set out in greater detail in the court's published memoranda. *See Blue Cross*, 36 F.Supp.2d 560 (E.D.N.Y.1999); *National Asbestos*, 23 F.Supp.2d 321 (E.D.N.Y. 1998).

### B. Procedural Background

On October 19, 1998, defendants' 12(b)(6) motion in National Asbestos was denied. *See* 23 F.Supp.2d 321, 323 (E.D.N.Y.1998). Given the expansive public policies of RICO, the comprehensive preemption force of ERISA law, and the conflicting decisions regarding the sufficiency of similar claims, a dismissal based on the pleadings was inappropriate.

On March 30, 1999, the defendants' motion to dismiss in Blue Cross was denied. *See* 36 F.Supp.2d 560, 564 (E.D.N.Y.1999).

The RICO allegations contained in the Blues' complaint was found to be consonant with Supreme Court precedent, modern tort law's conception of proximate causation, and the statutory design and policy of RICO.

Ten days after the *Blue Cross* opinion was issued and approximately six months after the *National Asbestos* opinion, the court of appeals of the Second Circuit decided an interlocutory appeal in a case involving RICO allegations against the tobacco industry by union trust fund-insurers. *See Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 172 F.3d 223 (2d Cir.1999) ("*Laborers Local 17*"). The court in *Laborers Local 17* found the claims of plaintiff trust funds to be compensated for tobacco related expenditures to be too "indirect." The defendants then renewed their motions to dismiss the complaints in both Blue Cross and National Asbestos on the grounds that both suits are controlled by *Laborers Local 17*.

### C. Amendments To Plaintiffs' Original Complaints

In June 1999 plaintiffs in both Blue Cross and National Asbestos moved to amend their complaints to add new claims and to restate, in the alternative, the original federal and state claims under subrogation; they continue to press all their original claims. They were permitted to amend their complaints pursuant to the liberal standards of Rule 15 of the Federal Rules of Civil Procedure. Decision was reserved on whether the amended complaints stated valid causes of action.

## II. ANALYSIS OF CLAIMS

Defendants argue that *Laborers Local 17* bars federal claims in both Blue Cross and National Asbestos. Yet, even if the plaintiffs' "direct" RICO theory, discussed in this court's *Blue Cross* and *National Asbestos* memoranda denying motions to dismiss, were barred by *Laborers Local 17*, neither of these actions can be dismissed at the pleading stage because the amended complaints state valid subrogated and other claims.

While it may not be commonplace for RICO claims to be asserted by a subrogee, such a claim is consistent both with the policies of RICO and the purposes of the modern equitable doctrine of subrogation. It is advisable to develop a full factual record in this and other issues (see infra, part II.D) in order to provide a more complete and accurate basis for possible appellate review.

### A. "Direct" RICO Claims

Defendants contend that *Laborers Local 17* bars plaintiffs' original complaints because the injuries are not sufficiently "direct." By contrast, plaintiffs argue that there are important factual and pleading distinctions between *Laborers Local 17* and Blue Cross and National Asbestos which could lead to different results.

There are differences between the Blues and the plaintiffs in *Laborers Local 17* which are relevant to the standing and proximate cause analysis. The Blues are not simply a traditional insurer which passively receives premiums for the purpose of allocating risk. As was recognized in *Blue Cross*, the Blues play a far more active and direct role in the provision of health care to its populations:

Today subscribers often rely on organizations such as the Blues not only to allocate risk, but also to help establish and administer networks of hospitals and physicians to make health care more affordable. The Blues are the largest provider of such managed are programs in the country. Some 45 million individuals are enrolled in some type of managed care administered by the Blues. Through these managed care programs plaintiffs take an active and leading role in shaping the delivery of health care in this country. Directly and indirectly, medical insurers-providers such as the Blues decide what medical procedures will be offered, to whom they will be

offered and when and how they will be offered.

*Blue Cross,* 36 F.Supp.2d at 586.

Despite the fact that the memoranda in *Blue Cross* and *National Asbestos* were rendered prior to the court of appeals' decision in *Laborers Local 17,* and despite the fact that, according to the defendants, the decisions were brought to the panel's attention before it issued its decision, neither *Blue Cross* nor *National Asbestos* was mentioned in *Laborers Local 17.*

Application of the talisman "direct injury" is difficult and highly fact specific. Because the plaintiffs state valid causes of action under alternate theories, there is nothing to be gained by the dismissal of individual claims at this time. The discovery required by the different claims is virtually identical. The striking of portions of either complaint would not appreciably save time or expense. It would not refine the issues for trial in any meaningful way.

### B. Plaintiffs' Subrogation Claims

■ The law of equity has long recognized that insurers, analogous in some respects to the plaintiffs, have a right to recoup the economic losses they incur as a result of tortious injury to their insureds. Under the doctrine of subrogation, an insurer possess the right to bring suit in its own name and to collect the economic damages that the insurer has incurred.

■ Subrogation functions as a form of assignment. RICO claims are assignable. *See, e.g., Koehler v. NationsBank Corp.,* 1997 WL 112836, at *2 (N.D.Ill. March 10, 1997) ("[F]ederal courts have consistently held that RICO claims are assignable."); *Resolution Trust Corp. v. S & K Chevrolet,* 868 F.Supp. 1047, 1054 (C.D.Ill.1994) ("Lower federal courts which have addressed the issue of the assignability of RICO claims have universally found that they are assignable."); *Nicolls Pointing Coulson, Ltd. v. Transportation Underwriters of La., Inc.,* 777 F.Supp. 493,

495 (E.D.La.1991) ("[D]istrict courts in other circuits have uniformly held that RICO treble damages claims are assignable."); *Federal Ins. Co. v. Parello,* 767 F.Supp. 157, 163 (N.D.Ill.1991) ("There is very little room to argue that Congress would intend to allow the assignment of antitrust claims and would prohibit the assignment of RICO claims."); *In re National Mortgage Equity Corp. Mortgage Pool Certificates Securities Litig.,* 636 F.Supp. 1138, 1155–56 (C.D.Cal.1986) ("Permitting the assignment of RICO claims ... would not restrict RICO's scope, but would serve to effectuate RICO's 'broad remedial purposes' ").

A number of courts which have addressed the issue have agreed that a subrogee can assert a RICO claim. *See, e.g., Ramos v. Patrician Equities Corp.,* 1993 WL 58428 (S.D.N.Y. March 3, 1993) (surety allowed to assert RICO claims of defaulting investors); *Federal Ins. Co. v. Ayers,* 760 F.Supp. 1118, 1119–20 (E.D.Pa. 1990); *Securities Investor Protection Corp. v. Poirier,* 653 F.Supp. 63, 65–66 (D.Or.1986); *General Accident Ins. Co. of America v. Fidelity & Deposit Co. of Md.,* 598 F.Supp. 1223, 1246 (E.D.Pa.1984).

The Supreme Court has assumed, for purposes of argument, that it was proper for a plaintiff to assert a subrogated RICO claim. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 271, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). There appears to be no persuasive authority for the proposition that a subrogee cannot bring a RICO action. The most analogous precedent in this circuit appears to be *Redington v. Touche Ross & Co.,* 592 F.2d 617, 624 (2d Cir.1978), *rev'd on other grounds,* 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), in which the court of appeals allowed the plaintiff to bring an equitable subrogation claim under the securities laws. The RICO claims of subrogees are consistent with both the policies of RICO and the purpose subrogation.

Defendants suggest that the plaintiffs cannot have a subrogated RICO claim be-

cause the subrogee plaintiffs "stands in the shoes" of their subrogors and, they argue, the subrogors themselves have no RICO claims for the economic injuries associated with treatment of smoking related illnesses. The defendants' analysis seems dubious. They are not necessarily correct in their supposition that the subrogors themselves do not have a RICO claim for the economic injuries associated with the treatment of smoking related illnesses. The argument is less than fully persuasive, furthermore, because it is based upon rigid and narrow interpretations of both RICO and the doctrine of subrogation—particularly in light of the massive damages claimed and huge numbers of people whose welfare is implicated.

Defendants' position that the smokers themselves have no RICO claims for their economic injuries is primarily based upon the caselaw of other circuits. *See, e.g., Doe v. Roe,* 958 F.2d 763, 770 (7th Cir. 1992) (no RICO claim for client coerced by lawyer into sexual relations; "sexual labor" not property for RICO purposes and related pecuniary expenditures "reflect personal injuries which are not compensable under RICO"); *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783 (9th Cir.1992); *Grogan v. Platt,* 835 F.2d 844, 848 (11th Cir.1988) (no RICO claim for pecuniary losses of injured FBI agents and estates of murdered agents; losses "most properly understood as part of a personal injury claim"); *Drake v. B.F. Goodrich Co.,* 782 F.2d 638, 643–44 (6th Cir.1986) (wrongful death claimants not allowed to amend complaint to state RICO action). This circuit has not previously embraced holdings so closely limiting RICO.

The defendants urge denial of plaintiffs' subrogated RICO claims for two reasons. Their first argument is based upon dicta contained in *Laborers Local 17.* In *Laborers Local 17,* the court recognized that the union trust funds retained their right to bring claims as subrogees notwithstanding the holding that their "direct" claims were barred. In contrast to the two instant cases, in Laborers Local 17 the position of the plaintiff trust funds was, for tactical purposes, that the smokers did *not* possess a RICO claim for the economic damages associated with the medical treatment of tobacco use. In dicta, the court of appeals accepted the plaintiffs' position, concurred in by defendants for arguments sake, as the correct statement of law:

> The Funds correctly note that these RICO causes of action could not be asserted by the smokers or by the Funds in a subrogation action because the RICO statute requires an injury to "business or property," whereas the smokers' injuries are personal in nature. . . . The Funds may still bring a subrogation action to recover the medical costs paid out for the individual smokers. . . . Although these will not be RICO claims, they will remedy the harm done by defendants' alleged misconduct.

*Laborers Local 17,* 172 F.3d at 235.

Defendants suggest that this passage of dicta in *Laborers Local 17* should be interpreted as a holding by the Second Circuit that smokers do not possess a RICO claim for the economic damage resulting from the medical treatment of tobacco use.

This argument is not persuasive. The plaintiffs in *Laborers Local 17* did not advance a subrogated claim in their pleadings. The plaintiffs never argued, before the district court or the court of appeals, that they possessed a subrogated RICO claim. To the contrary, as noted, they suggested, *arguendo,* that the smokers did *not* possess a RICO claim for their economic injuries. The court of appeals' dicta appears to represent an assumption the court made for purposes of argument rather than an attempt to definitively state an important new rule of law on a complex and controversial issue without the benefits of adverse briefing, argument of counsel, or its own analysis.

The defendants' second argument is that the holdings of the other circuits should be

adopted because they represent the reasoned view. While entitled to deference, these decisions are not persuasive.

At least two lower courts in this circuit have accepted the proposition that an individual may state a RICO cause of action for economic damages that are associated with personal injuries. *See Jerry Kubecka, Inc. v. Avellino,* 898 F.Supp. 963, 968 (E.D.N.Y.1995) ("If [murder victims] had been merely disabled by the attempt on their lives but survived, presumably they would have had a RICO claim for lost earnings from their business activities because they had been injured in their 'business or property.' "); *von Bulow v. von Bulow,* 634 F.Supp. 1284, 1309 (S.D.N.Y. 1986) ("The cost to [a murder target] of her committee and her inability to enjoy her personal and real property may well be compensable monetary injuries under RICO."). Some other decisions have also rested on a similar view. *See, e.g., Snead v. Hygrade Food Products Associates,* 1998 WL 910223, at *3 (E.D.Pa.1998) (emotional distress claims dismissed, claims for economic damages resulting from loss of employment allowed under RICO); *Reynolds v. Condon,* 908 F.Supp. 1494, 1517–19 (N.D.Iowa 1995) (emotional distress caused by RICO extortion not allowed but claims for loss of home and loss of income approved); *In re Cordis Corp. Pacemaker Product Liability Litigation,* 1992 WL 754061, at *3 (S.D.Ohio 1992) (plaintiffs allowed to allege RICO claims for costs of defective pacemakers and for costs of implanting and explanting them, but not for "personal" injuries).

The view of those courts allowing RICO claims for economic damages associated with personal injuries represents a defensible policy and interpretation of RICO. As the facts alleged in the instant complaints suggest, the economic consequences of personal injuries caused by racketeering can take, in the aggregate, a massive and severe toll on the nation's and these plaintiffs' economic wellbeing. This is arguably precisely the type of injury which RICO was designed to address and deter.

It is inappropriate to frustrate the policies of RICO merely because the economic injuries of the subrogees are related in some sense to the non-pecuniary claims of the subrogors. As several courts have pointed out, the claims of subrogees and subrogors are distinct and separate from one another. *See, e.g., Arkwright–Boston Manufacturers Mutual Ins. Co. v. City of New York,* 762 F.2d 205, 209 (2d Cir.1985) ("These two claims [of subrogor and subrogee] are separate and distinct, and do not constitute unlawful splitting under New York law."); *Fidelity & Deposit Co. of Md. v. Gaspard,* 1997 WL 335598, at *2 (E.D.La.1997) ("Since the two claims [of subrogee and subrogor] against [defendant] are distinct, a judgment rendered in the absence of [subrogor] would have no prejudicial affect on him."); *Winkelmann v. Excelsior Ins. Co.,* 85 N.Y.2d 577, 582, 626 N.Y.S.2d 994, 650 N.E.2d 841 (1995) ("The claims of the insurer for amounts paid by it and the insured's claim for uninsured losses are divisible and independent, and '[p]ermitting the insurer to sue … as equitable subrogee does not affect the insured's right to sue for the amount of the loss remaining unreimbursed.' " (quoting *Federal Ins. Co. v. Arthur Andersen & Co.,* 75 N.Y.2d 366, 374, 553 N.Y.S.2d 291, 552 N.E.2d 870 (1990))).

The legislative findings which preface the statute establish that RICO was designed to curtail the racketeering fraud which "annually drains billions of dollars from America's economy." *See* Pub.L. No. 91–452, § 1, 84 Stat. 922, 922 (1970); *see also* S.Rep. No. 91–617, at 79 (1969) (concluding that racketeers constituted a "serious threat to the economic well-being of the Nation"). Allowance of the subrogation claims asserted by the plaintiffs come well within the parameters of congressional concern.

Allegedly, economic injury to the plaintiffs' business and property has undermined the financial health and stability of

a critical industry in this nation—that devoted to health care of millions of people. The defendants' alleged racketeering, if proven, has contributed to the crisis in this nation's health care. *See, e.g.,* Vernellia R. Randall, *Managed Care, Utilization Review, and Financial Risk Shifting,* 17 U. Puget Sound L.Rev. 1, 3 (1994) ("[T]he costs of health care delivery has increased and has become a national concern."); Peter T. Kilborn, *Experts Offer Information About Americans Without Health Insurance,* N.Y. Times, Feb. 26, 1999, at A1 (43.4 million Americans without insurance, "adding to the burdens on the nation's health care system").

As pointed out in *Blue Cross,* many sectors of the nation's economy, its resources, and its economic life, have been severely affected by the defendants' alleged racketeering. Employers have even found it increasingly expensive and difficult to fund health care coverage for their own employees. See Jennifer Steinhauer, *Health Insurance Costs Rise, Hitting Small Business Hard,* N.Y. Times, Jan. 19, 1999, at A1. Businesses have been forced to devote larger and larger portions of their resources to providing health care or have reduced benefits to their workers, compelling taxpayers, the plaintiffs, and premium payers to subsidize the medical treatment of those who can no longer afford insurance. Research or treatment which would have been supported by resources of the health care industry have, it is contended, gone unfulfilled as a result of the defendants' alleged racketeering.

■ The plaintiffs' complaints in both Blue Cross and National Asbestos are sufficient to state a subrogated claim under federal RICO. According to the allegations, the plaintiffs qualify as subrogees of the smokers who have been injured as a result of the misconduct of the defendants. Plaintiffs have allegedly expended billions of dollars in the treatment of smoking related diseases. These payments were made as part of the plaintiffs' legal obligations to their subrogors. Any challenges to the plaintiffs' positions as proper subrogees would raise factual issues that can best be addressed at a later stage of these litigations. With respect to the defendants' conduct, the factual allegations contained in the complaints are sufficient to state a cause of action under RICO. *See Blue Cross,* 36 F.Supp.2d 560, 565–68 (E.D.N.Y.1999).

### C. Aggregation Of Claims

Aggregation of claims, severances and other issues of administration can be addressed during and after discovery. Such issues do not preclude a fair trial to both sides in view of the flexibility in structuring the litigation provided by the Federal Rules of Civil Procedure.

### D. State Claims

So much effort has already been invested in these cases that it is expedient to exercise supplemental jurisdiction over the state law claims in Blue Cross pursuant to section 1367 of Title 28. The validity of the Blues' state law claims, both "direct" and subrogated, remain unaddressed by *Laborers Local 17.* These state law claims provide an independent basis for this court's retention of jurisdiction over Blue Cross. The case was filed in this court more than 15 months ago. After more than a full year of discovery and motion practice, considerations of efficiency and fairness dictate that the parties be allowed to continue their suits in this court.

The viability of state law claims has not been fully briefed. Discovery on all claims—federal and state—appears at this pleading stage to be essentially the same.

### III. CONCLUSION

The motions to dismiss the complaints in Blue Cross and National Asbestos are denied. Discovery shall proceed under the close supervision of the magistrate judge with every effort made to limit the costs and to utilize materials already available

from other litigations in the many tobacco litigations in state and federal courts.

**SO ORDERED.**