THE HOME INSURANCE COMPANY, Plaintiff, *v.* MURRAY BERNSTEIN, Defendant.

Municipal Court of New York, Borough of Queens, First District, December 10, 1939.

*Martin Rosen*, for the plaintiff.

*Jacques I. Khautin*, for the defendant.

PETTE, J.   A very unusual situation is presented by the parties herein upon an agreed statement of facts.   The action is for money had and received.

In 1936 the defendant Murray Bernstein purchased a Plymouth automobile from Berry Bros. Motor Company, Inc.   Said purchase was financed by the Commercial Credit Corporation and in connection therewith a policy of collision insurance was procured from the plaintiff company to protect the purchaser, defendant herein, and the finance company.   The policy took effect on June 23, 1936, and was continued to December 23, 1937.

On June 28, 1936, Murray Bernstein was involved in an accident while operating said automobile.   He made a claim pursuant to his policy of collision insurance for damages resulting from said accident and received therefor the sum of $263.80.   This sum was paid for and on account to Berry Bros. Motor Company, Inc. The total damage was $313.80, and by operation of the deductible provision of the policy the plaintiff company was compelled to pay $263.80 to its insured.

Murray Bernstein, upon the completion of the adjustment of the claim under his policy, executed a loan receipt, in which he acknowledged the receipt of $262.80 from the Home Insurance Company, as a loan repayable out of the net proceeds of any recovery the company might make from any person.   As security for such repayment Bernstein pledged to said plaintiff the recovery and to deliver to it all documents necessary to show its interest in said property, and, further, to " enter and prosecute suit against such person or persons, corporation or corporations on account of

said claim for said loss, with all due diligence, at the expense and under the exclusive direction and control " of the plaintiff.

At the time of the purchase of the automobile the defendant signed the notes and conditional sales contract, although the title of the car was actually registered in the name of his mother, Yetta Bernstein, with the Bureau of Motor Vehicles.

Subsequent to the accident, Murray Bernstein, his sister and mother, instituted an action against the alleged tort feasor and settled the case, executing general releases therein.

The Home Insurance Company also brought an action against the tort feasor, in which it alleged its subrogation to the cause of action of Murray Bernstein for the property damage by virtue of its payment of $263.80 to him. The insurance carrier was defeated because of the fact that the general releases referred to were interposed as a bar, and as a consequence thereof the company was compelled to pay a bill of costs.

The defendant contends (1) that the releases signed by the defendant and his sister were for personal injuries only, and (2) that the release of his mother and real owner of the car, Yetta Bernstein, was for fifty dollars, the amount which she had to pay pursuant to the deductible provision in the policy of insurance. In corroboration as to true ownership of the car reference is made to the records of the Bureau of Motor Vehicles.

The object of insurance is to compensate the insured for loss. The contract of insurance is an agreement whereby, for a stipulated consideration or premium, the insurance company undertakes to indemnify the other against certain risks in which that party has an interest recognized by law. In the instant case, if the contention of the defendant as to his non-ownership of the car were true, then he had no insurable interest in the collision policy, and his receipt for $263.80 for indemnification for property damage to a non-existent car was the equivalent of obtaining money under false pretenses.

Like other contracts of insurance, the utmost good faith is required, *i. e.*, *uberrima fides*, and there is an obligation to voluntarily disclose all the facts and circumstances which are material to the risk and not within the knowledge of both parties. (26 Cyc. 617; *Cox* v. *Blake Co.*, 100 Misc. 135, 140.) The duty of communication is independent of intention, and is violated by the fact of concealment even where there is no design to deceive. (*Sun Mutual Ins. Co.* v. *Ocean Ins. Co.*, 107 U. S. 485; *Hanover Fire Ins. Co.* v. *Morse Dry Dock & Repair Co.*, 152 Misc. 111.)

It is well settled that an insurer who pays claims against the insured for damages caused by the wrongdoing of a third party is entitled to be subrogated to the rights which the insured would

have had against such third party for its default or wrongdoing. This right of subrogation is based upon principles of equity and natural justice. This court must recognize the fairness of the proposition that an insurer who has been compelled by his contract to pay to or in behalf of the insured claims for damages ought to be reimbursed by the party whose fault caused the damages, and the principle of subrogation ought to be liberally applied for the protection of those who are its beneficiaries. (*Ocean Accident & Guarantee Corp.* v. *Hooker Electrochemical Co.,* 240 N. Y. 37; *Lord & Taylor, Inc.,* v. *Yale & Towne Mfg. Co.,* 230 id. 132.)

The subrogee acquires rights which as between it and the insured are beyond the power of cancellation and destruction by the latter, and, under our practice, is entitled to enforce these rights by an action in its own name, and without joining the insured as a party. (*Lord & Taylor, Inc.,* v. *Yale & Towne Mfg. Co., supra.*)

However, a defendant whose wrongdoing caused claims against the insured which the insurer paid, *and who was chargeable with notice of the insurer's rights as subrogee* of the insured, and who made a settlement to which the insurer was not a party, must be regarded as having made the settlement *subject* to the rights possessed by the insurer. Thus it has been held by the Court of Appeals in *Ocean Accident & Guarantee Corp.* v. *Hooker Electrochemical Co.* (*supra*) that the general release of a defendant by the insured's trustee in bankruptcy did not destroy the insurer's cause of action against the defendant, where the insurer was not a party to the settlement, and he was charged *with the knowledge* that the insurer was a subrogee of the insured, and had acquired a right of action which the insured had no right to cancel. (*Fire Assn. of Philadelphia* v. *Wells,* 84 N. J. Eq. 484; 94 A. 619; *Swarthout* v. *Chicago & Northwestern R. Co.,* 49 Wis. 625; 6 N. W. 314; *Pittsburgh, C., C. & St. L. R. Co.* v. *Home Ins. Co.,* 183 Ind. 355, 370; 108 N. E. 525; *Cushman & Rankin Co.* v. *B. & M. R. R.,* 82 Vt. 390, 397; 73 A. 1073.)

The crux of this case is dependent, not so much upon the actual ownership of the car by either Murray Bernstein, to whom the policy and moneys were given, or his mother, but upon the contents of the general releases given by them to the tort feasor. Of extreme importance is the fact that *no reservation was made therein as to the property damage in excess of fifty dollars to protect the right of subrogation possessed by the Home Insurance Company.* The releases were of the average blanket variety. By the execution and delivery thereof the defendant and his mother prevented the exercise of the plaintiff's right of subrogation under the policy and

receipt as against the original tort feasor. This constituted a willful breach of the terms and conditions of said written instruments.

Assuming the defendant's contention as to ownership of the car in his mother, the factual result remains unchanged, namely, that she also executed a general release, *without reservation* as to the subrogation rights of the Home Insurance Company, which gave $263.80 to her son and agent towards repairing the car, and indirectly to her, as undisclosed principal.

*If his mother was in fact the true owner of the car at the time of the accident, this defendant had no insurable interest, and in such event was certainly not entitled to the payment for property damage on a car he did not own. It is also to be noted that at no time did the defendant attempt to change the policy and inform the plaintiff insurance company as to his mother's alleged title to the car. This manoeuvering of title and insurance is tainted with suspicion as to proper motives therefor.*

The defendant cannot avoid the express provisions of the printed policy and receipt. When the defendant received the $263.80 he pledged repayment to the extent of " any net recovery we may make from any person * * * on account of loss by collision to *our* property." This was an express representation to the company that at the time the defendant received the money the car was *his* property.

The defendant likewise has violated his pledge, in the aforementioned receipt, that he " agreed to enter and prosecute suit against such persons * * * on account of said claim under the exclusive direction and control of said Home Insurance Company." The general release, without reservations, executed and delivered by the defendant and his mother, effectively prevented any such further prosecution against the tort feasor.

Under the circumstances and proof offered herein I feel constrained to grant judgment in favor of the plaintiff and against the defendant in the sum of $263.80 and interest thereon from June 30, 1936.