*1004 OPINION OF THE COURT
John V. Vaughn, J.
This case presents to the court issues concerning underinsured motor vehicle coverage and the subrogation clause in the respondent company’s insurance policy.
The issue is whether the underinsured motorist carrier (Nationwide) may, under its right of subrogation, condition its payment of the arbitration award upon the insured’s preservation of its rights against the tort-feasor when the tort-feasor’s carrier (Maryland) has offered its full policy in settlement for a general release of the tort-feasor.
Underinsured motorist coverage achieved recognition in this State by an amendment to the uninsured motorist provisions of the Insurance Law (L 1977, ch 892). Prior to that time the law merely required that every insurance policy provide uninsured motorist coverage in a specified amount. The purpose of this coverage was to provide financial compensation within stated limits to innocent victims who were injured by the wrongful conduct of an uninsured motorist (McCarthy v MVAIC, 16 AD2d 35, affd 12 NY2d 922).
Recognizing that in terms of obtaining an adequate recovery from a negligent driver the innocent victim was placed at financial risk not only by uninsured but also by underinsured drivers, the Legislature amended the statute to require that each insurer offer its insureds the option of purchasing additional supplementary uninsured motorist insurance for bodily injury limited to a maximum of $100,000, or the limits of the bodily injury coverage of the insured’s policy, whichever was less (Insurance Law § 3420 [f] [2]). In effect, the "supplementary underinsurance” coverage expands on the uninsured coverage and the policy endorsements should therefore be read together where possible (see, Reichel v Government Employees Ins. Co., 66 NY2d 1000).
One distinction between uninsured motorist and under-insured motorist coverage is that the insured may seek initial recourse against his own company where the tort-feasor is uninsured. On the other hand, if the tort-feasor is underinsured, the insured may not pursue his contractual right against his own liability insurer until he has first recovered the tort-feasor’s liability limits by settlement or judgment (Insurance Law § 3420 [f] [2]). In that respect, underinsured motorist coverage has the attributes of excess rather than *1005 primary protection. It is this distinction which creates the practical problem presented in this case.
Petitioner, Huth, was injured on March 23, 1987 while she was in the process of entering the Bornstein vehicle when Irving Bornstein accelerated his vehicle before petitioner had successfully completed her entry. Bornstein was insured by Maryland Casualty Company (not a party to this proceeding) in the amount of $10,000/$20,000. Petitioner had a policy with the respondent, Nationwide, which provided for the underinsurance coverage involved in this dispute. Petitioner commenced an action for negligence against Bornstein in .1987.
Thereafter in April 1988, Nationwide advised the petitioner’s attorney that it would not waive its right of subrogation under the policy and suggested the language the petitioner should include in any release she executed in favor of Born-stein. Maryland Casualty Company (Maryland) on behalf of Bornstein offered its full policy in settlement of the case against him. There is some indication from petitioner’s counsel that Maryland had originally accepted the wording of the release requested by Nationwide. Huth then demanded payment under its underinsurance coverage and the matter proceeded to arbitration. Ultimately an award of $37,500 was made and confirmed by the court against Nationwide. It was determined that this amount was to be over and above the $10,000 offered by Maryland. The matter was reduced to judgment and no appeal has been taken.
Subsequently Maryland Casualty Company refused the proffered release and indicated it would only accept a general release. On the other hand, Nationwide refuses to pay under the underinsured motorist coverage unless its right of subrogation under the policy is preserved.
Respondent Nationwide has moved for an order directing the petitioner to accept the check tendered in accordance with the arbitration award and to add Maryland as a party respondent in this action. The petitioner has cross-moved for an order directing Nationwide to pay the full $47,500 in return for petitioner’s execution of a subrogation agreement of her rights against Bornstein. Bornstein seeks permission to intervene and for an order directing the petitioner to execute a general release in his favor and to accept the check from Nationwide.
The underinsured endorsement of respondent’s policy (supplementary uninsured motorist insurance endorsement 1737) *1006 refers to and amends the uninsured motorist endorsement (NY Auto Accident Indemnification Endorsement AL 68796) of the same policy. The latter endorsement, under "exclusions”, indicates:
"This endorsement does not apply:
"(b) to bodily injury to an insured * * * to which such insured * * * shall without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor”;
and under the trust agreement (condition 8):
"In the event of payment to any person under this endorsement:
"(1) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;
"(b) Such person shall hold in trust for the benefit of the company, all rights of recovery which he shall have against such other person or organization because of such bodily injury;
"(c) Such person shall do whatever is proper to secure and shall do nothing after loss to prejudice such rights.;
"(e) such person shall execute and deliver to the company, such instruments and papers as may be appropriate to secure the rights and obligations of such person and the company established by this provision, and upon the request of the company, shall attend hearings and trials and assist in securing and giving evidence obtaining the attendance of witnesses and in the conduct of any legal proceedings.”
The validity, construction and effect of "consent to settle” and "subrogation” clauses has received varied treatment in the courts of other States (Annotation, 18 ALR4th 249). In Schmidt v Clothier (338 NW2d 256 [Minn 1983]) relied upon by the petitioner, the court upheld the subrogation rights of an underinsured carrier. However the court conditioned that right by providing that the right of subrogation was lost if the insurance carrier did not prevent the settlement by exchanging its draft for the amount of the settlement within 30 days after it received notice of the proposed settlement. In Longworth v Van Houten (223 NJ Super 174, 538 A2d 414 [1988]), *1007 New Jersey declined to follow the Schmidt case and held that the subrogation and consent to settle clauses were violative of the State’s public policy because they impinged upon the insured’s right to manage and dispose of his claim and frustrated the legislative design to decrease litigation and provide for prompt settlement.
Whatever the results reached elsewhere, the Appellate Division, Second Department, without discussion, has upheld the validity of the "consent” and "subrogation” clauses and has precluded an insured from asserting his underinsured motorist claim where he failed to obtain the insurer’s consent or protect its right of subrogation when he settled with the tortfeasor (State Farm Mut. Auto. Ins. Co. v Taglianetti, 122 AD2d 40). In its decision the court relied upon Weinberg v Transamerica Ins. Co. (62 NY2d 379), and Tucker v Seward (400 So 2d 505 [Fla App]).
In Weinberg (supra) the court held that in executing a settlement against a tort-feasor the insured had prejudiced the subrogation rights of his insurer unless he protected those rights by express provision in the release executed to the tortfeasor. In Weinberg (supra) plaintiff had obtained additional personal injury coverage, that is, coverage for economic loss above the statutorily required $50,000 no-fault coverage. After obtaining the maximum amount available under the tort-feasor’s no-fault policy, plaintiff made a claim for extended economic loss under his own policy. At the same time plaintiff brought an action for negligence against the tort-feasor. He settled that action and gave the tort-feasor a general release. At that point, Transamerica denied liability on the ground that by releasing the tort-feasor the plaintiff had breached his obligation under the policy not to prejudice the subrogation rights of Transamerica. In Tucker (supra), the court also upheld the validity of the "consent to settle” and "subrogation clauses”. There, the plaintiff had mistakenly settled an action against the tort-feasor without advising its underinsurance carrier. However, in upholding the right of subrogation the court denied summary judgment to the carrier holding that the plaintiff might establish that the carrier was not prejudiced by the breach of the policy provisions.
This court does not believe the State Farm Mut. case (supra) is dispositive of the issue in this case. Here, unlike State Farm Mut., the petitioner has not only notified the carrier of the proposed settlement, but has also completed arbitration of the underinsured claim. Nevertheless, Nationwide, while ostensi *1008 bly agreeing to the settlement, has insisted that the petitioner preserve its right of subrogation against the tort-feasor. This has placed petitioner in a difficult situation, since Maryland will not settle without protecting its own insured by obtaining a general release.
It is well established that an insurer has the obligation of good faith towards its insured and that insurance policies are generally construed in favor of the insured. With this in mind the court concludes that upon notification to the insurer of the proposed settlement, the insurer must decide within a reasonable time whether to accept the proposal and waive its right to subrogation, or reject it and upon receipt of any required assignment pay its insured the amount of the proposed settlement plus any arbitration award already made. Any other interpretation would, as here, increase litigation and unfairly delay the insured’s recovery.
The request of the intervenor, Bornstein, for an order directing the execution of a general release in his favor is denied. Considering only the interest of the insurer and the tort-feasor, there is no reason why the insurer should not have a right of subrogation against the wrongdoing underinsured tort-feasor. The problem with the right of subrogation arises only when it has an adverse effect on the right of the insured to seek and recover as promptly as possible as full a recovery as can be obtained from the combined resources of the tortfeasor’s liability carrier and his own underinsured motorist carrier.
The request to add Maryland as a party is similarly denied.
In this case respondent Nationwide has had ample opportunity to determine whether it wishes to proceed against the tort-feasor in an attempt to recover more than his limited coverage. Accordingly respondent must make its decision within 20 days of a service of a copy of this order upon it. If respondent chooses to pursue its right of subrogation it must pay petitioner the amount of the settlement plus the arbitration award and petitioner must execute any required documents.