**Caryl Antony Vaughan GIBBS, individually And As Representative of all Members of Those Syndicates at Lloyd's London Severally Subscribing to Lloyd's Policy No. 601/BS 11654, Plaintiff,**

v.

**HAWAIIAN EUGENIA CORPORATION, Defendant.**

**No. 83 Civ. 2751(MEL).**

United States District Court,
S.D. New York.

Sept. 4, 1991.

See also 581 F.Supp. 1269.

Symers, Fish & Warner, (William Warner, of counsel), New York City, for plaintiff.

Christopher P. Keane, P.C., New York City, for defendant.

LASKER, District Judge.

This case presents issues concerning the rights of an insurer who has honored a claim under a Marine Insurance policy when the insured releases a third party allegedly liable for the loss. The question presented is whether the indemnified insured party has a duty to establish in the release that the insurer's subrogated rights have been reserved.

On October 14, 1980, defendant, the Hawaiian Eugenia Corporation, owner of the vessel Poet, entered into a charter party with the Egyptian Company of Maritime Transport (the "Charterers") agreeing to carry a shipment of corn from the United States to Egypt. Plaintiff, Caryl Antony Vaughan Gibbs, represents members of a syndicate at Lloyds (the "Underwriters") who, on October 23, 1980, insured Hawaiian's interest in the remuneration to be paid by Charterers for the hire of the ship (the "freight").

On October 24, 1980, the Poet departed Philadelphia bound for Alexandria. While en route to Egypt, the ship was lost at sea. No trace of the vessel, its crew or cargo was ever found. Subsequently, on March 13, 1981, the Underwriters settled Hawaiian's claim for the loss of the remuneration that was to be paid by the Charterers. The Underwriters indemnified Hawaiian by paying in full the insured amount of $1,096,825.34.

In the meantime, Hawaiian had instituted an action for limitation of liability on the cargo in the United States District Court for the Eastern District of Pennsylvania. See 1982 A.M.C. 1388 (E.D.Pa.1982). The Charterers made a claim against Hawaiian for $3,281,481.94 in damages for the loss of the corn shipment. Hawaiian settled this claim by paying $1,047,500 in damages and by delivering a general release of the Charterers with respect to all claims Hawaiian might have against the Charterers.

Before signing the release, Hawaiian informed the Underwriters' counsel that Hawaiian intended to release the Charterers from any liability for freight charges and requested Underwriters' approval of the release. A few weeks prior to the execution of the release, the New York attorney of the London-based Underwriters wrote to Hawaiian asking for a copy of the policy to assess the impact of the release. Hawaiian did not respond to this request until after the release was executed. The Underwriters never consented to the release of their subrogated rights.

Underwriters have commenced this action against Hawaiian to recover 90% of the insured amount which had been paid to Hawaiian. Plaintiff claims that by delivering the release to the Charterers, Hawaiian destroyed Underwriters' subrogated rights against the Charterers. The rights allegedly destroyed by the release are those contained in clause 32(B) of the charter party between Hawaiian and the Charterers which provides that the Charterers must pay 90% of the remuneration for the hire of the Poet if the ship fails to arrive at its destination "because of damage caused by the perils of the sea."

The Underwriters, in Hawaiian's name, attempted to exercise their subrogated rights by seeking a court order compelling Charterers to arbitrate the claim under clause 32(B). However, because of the release granted by Hawaiian to Charterers, Judge Brieant denied the petition. *In The Matter of The Arbitration between Hawaiian Eugenia Corporation, Petitioner, and The Egyptian Commercial and Economic Office of Washington, D.C., as Agents for The Ministry of Supply, Cairo, Arab Republic of Egypt, Respondents*, 82 Civ. 7381 CLB, Memorandum and Order (S.D.N.Y. Jan. 17, 1983).

In this action both the Underwriters and Hawaiian move for summary judgment. In the alternative, Hawaiian moves for an order dismissing the action for failure to prosecute pursuant to Fed.R.Civ.Pro. 41(b).

Hawaiian offers two arguments in support of its position. In the first place, it contends that the Underwriters waived any theoretical right of subrogation they might have had. According to Hawaiian, the Underwriters waived their subrogated rights either by omitting to give instructions to Hawaiian regarding the release until after it was executed *or* by failing to pursue recovery against the Agency for International Development ("A.I.D.") [1].

Hawaiian's second argument is that the release did not destroy Underwriters' subrogated rights because, even absent a release, Hawaiian did not have a right of recovery against the Charterers.

For reasons discussed below Hawaiian's motions are denied, while the Underwriters' motion for summary judgment is granted.

I

Hawaiian contends that, under New York law, the Underwriters waived their rights by failing to respond within twenty days to Hawaiian's request for instructions regarding the release. In support of this proposition it cites *Huth v. Nationwide Ins. Co.*, 148 Misc.2d 1003, 560 N.Y.S.2d 724 (Sup.Ct.1990), which ruled that an insurer, who has not yet indemnified the insured, must choose, within twenty days, whether to accept the settlement proposed by a tortfeasor and waive its subrogated rights or reject the settlement, pay the insured and pursue its subrogated rights.

*Huth* is inapplicable, however, because in the instant case the Underwriters had already indemnified Hawaiian. Moreover, *Huth* seems to be predicated particularly upon The New York State Insurance Law covering uninsured or underinsured motorists, the applicable provisions of which are not necessarily transferable to marine insurance cases.

■ The Underwriters' attorney contacted Hawaiian approximately a month prior to the execution of the release requesting a copy of the policy to evaluate the impact of the release. Because Hawaiian provided the document requested only two weeks after executing the release, knowing that the Underwriters believed the document to be necessary to determine their position concerning the release, Hawaiian cannot now plausibly claim that the Underwriters intentionally relinquished their subrogated rights.

1. The Agency for International Development, an entity of the U.S. Department of State, issued on September 26, 1980 a Letter of Commitment guaranteeing letters of credit issued by the Morgan Guaranty Trust Company to finance commodities purchased by the Arab Republic of Egypt. The Charter of the Poet would have been an eligible transaction under the Letter of Commitment if a notice of the vessel's arrival in Egypt had been presented for payment.

Hawaiian further argues that the Underwriters waived any right of recovery against the Charterers because they failed to participate with Hawaiian in an effort to pursue recovery against A.I.D. The argument is unpersuasive. In support of its theory Hawaiian cites only an obscure Municipal Court case holding that an insurer who fails to participate in an action against a tortfeasor cannot later complain that it was deprived of its rights of subrogation. *Sun Ins. Office v. Hohenstein,* 128 Misc. 870, 220 N.Y.S. 386 (Mun.Ct.1927). *Sun* is irrelevant because Hawaiian did not commence an action against Charterers. On the contrary, Hawaiian released the Charterers from their obligations.

Hawaiian argues further that its release did not destroy any subrogated rights because Hawaiian had no enforceable claim against the Charterers. "Where the insured has no right of recovery, the insurer has no right of subrogation." *Illinois Produce International, Inc. v. Reliance Ins. Co.,* 388 F.Supp. 29 (N.D.Ill.1975).

■ According to Hawaiian, the Underwriters did not prove that the Charterers might have been liable for the freight. This argument is undermined by Hawaiian's agreement in the Marine Confirmation of Insurance that its contract with the Charterers would allocate to the Charterers the risk of loss of the freight due to nonarrival of the vessel. Since the freight insurance contract was conditioned upon the inclusion in the charter party of clause 32(B), which requires the Charterers to pay freight even if the ship fails to arrive provided that Hawaiian is not at fault, Hawaiian had reason to expect that the Underwriters would attempt to collect freight charges from the Charterers. The inclusion of clause 32(B), gave the Underwriters reason to rely on the Charterers' broad commitment to pay the freight in assessing the risk profile of this policy. Thus, Hawaiian may not now claim that the Charterers were never liable for the freight.

■ Hawaiian further maintains that there was no right of recovery against the

Charterers because the condition precedent [2] that A.I.D. be satisfied with the evidence submitted by the shipowners was not met. However, Hawaiian cannot now persuasively raise this argument because it failed to provide to the A.I.D. evidence that, according to the Underwriters, may have satisfied the agency. *See* U.S. Nat'l Transp. Safety Bd., Marine Accident Report on the Disappearance of the S.S. Poet (1981). As this report may have satisfied A.I.D.'s requirements, Hawaiian fails to demonstrate that the subrogated rights were worthless.

## II

Underwriters have moved for summary judgment on the grounds that upon being indemnified Hawaiian had a duty to preserve the Underwriters' subrogated rights against the Charterers. Under governing New York law:

> an insured will be held to have prejudiced the subrogation rights of his insurer unless he establishes by express provision in the release executed to the third party or by necessary implication arising from the circumstances of the execution of the release that the settling parties reserved the rights of the insurer against the third-party tort-feasor or otherwise limited the extent of their settlement to achieve that result.

*Weinberg v. Transamerica Insurance Co.,* 62 N.Y.2d 379, 381–382, 477 N.Y.S.2d 99, 465 N.E.2d 819 (1984).

■ The *Weinberg* court ruled that the burden was on the insured to prove that its release did not prejudice the subrogated rights of the insurer, and the insurance policy in *Weinberg* contained an express contractual provision requiring the insured not to prejudice the subrogation rights of the insurer. In contrast, in the present case the freight insurance contract contained no comparable covenant. Nevertheless, the Underwriters' subrogated rights may not be fairly left to the whim of Hawaiian without eviscerating the aim of

---

**2.** Clause 32(B) of the Charter Party provides that Charterers are obligated to pay 90% of the freight if A.I.D. is satisfied that the damage was caused "by the perils of the sea".

the equitable right of subrogation which arises upon full indemnification of the insured. *Federal Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 553 N.Y.S.2d 291, 293, 552 N.E.2d 870 (1990) (the right of subrogation accrues equitably upon payment of the loss). The goal of equitable subrogation is to secure the discharge of a liability by the person who in good conscience ought to pay it. To implement this goal, the indemnified party has an implied duty to preserve the subrogated rights of the insurer and bears the burden of proving that the release did not destroy the subrogated rights. Even though Hawaiian was not bound by specific contract language to preserve the Underwriters' subrogated rights, such a duty, and the related burden of proof, are fairly to be implied when, as in this case, the loss has been fully reimbursed by the insurer, and the insured was aware of the reimbursement.

### III

■ Hawaiian's motion to dismiss for failure to prosecute pursuant to Fed. R.Civ.P. 41(b) is denied. There is no evidence that the plaintiff deliberately proceeded in a dilatory fashion or that the plaintiff failed to honor its commitments. *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37 (2nd Cir.1982). The party's right to due process and the strong public policy that favors adjudication on the merits militate against dismissal for failure to prosecute. *See Lukensow v. Harley Cars of New York*, 124 F.R.D. 64 (S.D.N.Y.1989); *see also Dove v. Codesco*, 569 F.2d 807 (4th Cir.1978).

The Underwriters' motion for summary judgment is granted; Hawaiian's motions for summary judgment and for dismissal based on failure to prosecute are denied.

Submit judgment on notice.