966 F.2d 101
 1993 A.M.C. 43
 Caryl A. Vaughn GIBBS, Individually and as Representative of
all Members of the Syndicates at Lloyd's London
Severally Subscribing to Lloyd's Policy
No. 601/BS 11654, Plaintiff-Appellee,
v.
HAWAIIAN EUGENIA CORPORATION, Defendant-Appellant.
 No. 1194, Docket 91-9270.
 United States Court of Appeals,
Second Circuit.
 Argued March 26, 1992.
Decided June 8, 1992.
 
 Christopher P. Keane, New York City (Keane and Marlowe, on the brief), for defendant-appellant.
 William Warner, New York City (Symmers, Fish & Warner, on the brief), for plaintiff-appellee.
 Before: LUMBARD, NEWMAN, and CARDAMONE, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This case presents issues concerning the rights of an insurer who has honored a claim under a marine insurance policy when the indemnified insured releases a third party allegedly liable for the loss. The question presented is whether the execution of the release in the circumstances of this case destroyed an enforceable right of subrogation on the part of the insurer. Hawaiian Eugenia Corporation ("Hawaiian") appeals from the September 16, 1991, judgment of the United States District Court for the Southern District of New York (Morris E. Lasker, Judge), 771 F.Supp. 638, denying Hawaiian's motion for summary judgment and granting summary judgment in favor of Caryl A. Vaughn Gibbs, individually and as representative of all members of those syndicates at Lloyd's, London severally subscribing to Lloyd's policy no. 601/BS 11654 ("Underwriters"). Hawaiian also appeals from the October 23, 1991, order denying its motion for reargument.
 
 Background
 
 2
 In 1980, defendant Hawaiian, owner of the SS Poet, entered into a voyage charter party with the Egyptian Company of Maritime Transport ("the Charterers") for the carriage of a cargo of corn from the United States to Egypt. Plaintiffs-Underwriters insured Hawaiian's interest in the remuneration to be paid by Charterers for the hire of the ship (the "freight") in the amount of $1,096,825.34.
 
 
 3
 Paragraph 32 of the charter party between Hawaiian and the Charterers pertained to freight payment and provided for payment of 90 percent of the freight to be made by the United States Agency for International Development ("A.I.D.")[1] to Hawaiian "upon satisfactory notice from the importing country of vessel's arrival at first port of discharge." However, clause 32B(2), reproduced in the margin,[2] provided that such a notice of arrival was not required in the event that the shipowner could prove, to the satisfaction of A.I.D., that nonarrival was due to a force majeure without the fault of the vessel owner. The Underwriters' contract of insurance with Hawaiian was expressly conditioned upon the inclusion of such a freight provision in the charter party. See Marine Confirmation of Insurance at 1.
 
 
 4
 The Poet departed Philadelphia on October 24, 1980, bound for Alexandria, Egypt. Severe weather conditions prevailed over the Poet 's prospective route, and the ship was lost at sea. No trace of the ship, its cargo, or its crew was ever found. On March 13, 1981, the Underwriters settled Hawaiian's claim for the loss of the freight that was to be paid under the charter party. The Underwriters indemnified Hawaiian, paying in full the insured amount of $1,096,825.34.
 
 
 5
 Immediately thereafter, Hawaiian's broker initiated efforts to recover the freight charges from A.I.D. pursuant to clause 32B(2) of the charter party. The broker supplied A.I.D. with requested documentation to support its claim that the Poet was lost at sea without fault of the shipowner. Underwriters did not participate in these efforts or take any independent action to pursue recovery from A.I.D. On October 15, 1982, A.I.D. informed the agents for Charterers that A.I.D. declined to pay the freight requested because it was not convinced that the non-arrival of the Poet was without the fault of the vessel owner.
 
 
 6
 In the meantime, Hawaiian had instituted an action in the Eastern District of Pennsylvania for limitation of liability for all potential claims relating to the loss of the vessel. See In re Petition of Carol A. Gooden, 1982 A.M.C. 1388 (E.D.Pa.1982). The Charterers made a claim against Hawaiian of $3,281,481.94 in damages for the loss of the corn shipment. Hawaiian settled this claim by paying $1,047,500 in damages and delivering a general release with respect to all claims Hawaiian might have against the Charterers arising from the transport of the cargo.
 
 
 7
 Prior to executing the release, Hawaiian forwarded a copy of the proposed release to Underwriters and their counsel and requested their prompt instructions. Responding on March 30, 1982, counsel for Underwriters requested a copy of the collect freight policy between the Underwriters and Hawaiian. The next day Hawaiian's agent sent the Marine Confirmation of Insurance which contained, in brief, the relevant terms and conditions of the policy. Five weeks later, on May 5, 1982, having heard nothing from Underwriters or their counsel, Hawaiian executed the release in favor of Charterers. On May 11, 1982, Underwriters' counsel wrote to Hawaiian's agent acknowledging receipt of the Marine Confirmation of Insurance and repeating its request for a copy of the original policy.[3] Hawaiian's agent then forwarded a copy of the original policy to Underwriters.
 
 
 8
 Underwriters submitted a subrogation instrument to Hawaiian for signature on July 22, 1982. Hawaiian signed the instrument and, on November 5, 1982, Underwriters attempted to exercise their subrogation rights by seeking a court order compelling Charterers to arbitrate the claim for freight pursuant to the arbitration clause of the charter party. Charterers submitted an affidavit in opposition, arguing both that clause 32B(2) of the charter party precluded recovery from Charterers since the loss of the vessel was not shown to be without fault of the vessel owner, and that the general release given by Hawaiian had extinguished any claim for freight. On January 17, 1983, District Judge Brieant denied Underwriters' petition on the ground that the claim sought to be arbitrated was the subject of a release for a full and adequate consideration given in May of 1982. In re Arbitration Between Hawaiian Eugenia Corporation, Petitioner, and the Egyptian Commercial and Economic Office of Washington, D.C., as Agents for the Ministry of Supply, Cairo, Arab Republic of Egypt, Respondents, 82 Civ. 7381-CLB, Memorandum and Order (S.D.N.Y. Jan. 17, 1983).
 
 
 9
 On April 11, 1983, Underwriters commenced this action against Hawaiian to recover 90 percent of the insured amount that had been paid to Hawaiian. Underwriters claimed that, by delivering the release to the Charterers, Hawaiian had destroyed Underwriters' subrogation rights against the Charterers to recover 90 percent of the charter freight pursuant to clause 32B(2) of the charter party governing payment in the case of non-arrival of the vessel. Hawaiian filed its answer denying Underwriters' allegations on June 2, 1983. Late in 1983, Underwriters began preliminary discovery, but after adjourning the one noticed deposition in July of 1984, Underwriters took no further action to prosecute this matter for more than five and a half years. On March 23, 1990, Underwriters served upon Hawaiian a Request for Admission of Facts. In the summer of 1990, both Underwriters and Hawaiian moved for summary judgment before Judge Lasker, and, in the alternative, Hawaiian moved for an order dismissing the action for failure to prosecute pursuant to Fed.R.Civ.P. 41(b).
 
 
 10
 On September 4, 1991, the District Court granted Underwriters' motion for summary judgment and denied Hawaiian's motions. The District Court ruled that Hawaiian had breached its duty to preserve the Underwriters' subrogation rights against the Charterers. The Court rejected Hawaiian's argument that Underwriters had waived any theoretical right of subrogation they might have had either by Underwriters' failure to tender instructions with regard to the release or by their failure to join Hawaiian in pursuing recovery from A.I.D. The Court also rejected Hawaiian's argument that the release did not destroy Underwriters' subrogation rights because, even in the absence of a release, Hawaiian did not have a right of recovery against the Charterers.
 
 
 11
 On appeal, Hawaiian raises four main contentions. First, Hawaiian argues that its execution of the release in favor of Charterers did not prejudice Underwriters because Hawaiian had no right to recover freight from Charterers, and that the District Court's determination to the contrary rested on a factual error. Second, Hawaiian argues that, even if it had some right of recovery against Charterers, the District Court erred in failing to consider Hawaiian's argument that, in spite of the execution of the release, Charterers' knowledge of the Underwriters' payment to Hawaiian served to preserve whatever subrogation rights Underwriters might have had. Third, Hawaiian renews its contention that Underwriters' silence in the face of Hawaiian's request for instructions regarding the proposed release, and its prolonged inaction in pursuing recovery of the freight, constitute a waiver of any theoretical right of subrogation. Finally, Hawaiian argues that the District Court improperly denied its motion for dismissal for failure to prosecute.
 
 
 12
 We reverse the order of summary judgment and remand to the District Court to determine whether the release caused any prejudice to Underwriters' rights.
 
 Discussion
 1. Enforceable right of subrogation
 
 13
 The doctrine of subrogation is based upon principles of equity; its purpose is to afford relief to those required, as insurers, to pay a legal obligation that ought, "in equity and good conscience," to have been met by another. 16 Couch on Insurance 2d § 61:18, at 93 (Rev. ed. 1983). As a creature of equity, the right of subrogation does not arise from, nor is it dependent upon, statute or the terms of the contract of insurance. Id. § 61:20, at 96-97. The general rule is that an insurer's right to subrogation attaches, by operation of law, on paying an insured's loss. See Federal Insurance Co. v. Arthur Andersen & Co., 75 N.Y.2d 366, 372, 553 N.Y.S.2d 291, 293, 552 N.E.2d 870, 872 (1990) (right of subrogation accrues equitably upon payment of the loss); 16 Couch, supra, §§ 61:4, 61:20; 6A Appleman, Insurance Law and Practice, § 4051 (1972). At that time, the insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, and the insurer succeeds to all the procedural rights and remedies possessed by the insured. See Phoenix Insurance Co. v. Erie and Western Transportation Co., 117 U.S. 312, 320-21, 6 S.Ct. 750, 753, 29 L.Ed. 873 (1886); 16 Couch, supra, § 61:4; 6A Appleman, supra, § 4051.
 
 
 14
 When an insured settles with or releases a third party from liability for a loss that the third party has caused, the insurer's subrogation right against such party may be destroyed. 6A Appleman, supra, § 4092. Where a release of liability given by the insured to a third party destroys the insurer's right to subrogation, such a release bars the insured's right of action on the policy, and, if the insurer has already indemnified the insured, the insurer has a right to recover from the insured the amount paid on the policy. Id., §§ 4093, 4094; see also Home Insurance Co. v. Bernstein, 172 Misc. 763, 765, 16 N.Y.S.2d 45, 49 (Mun.Ct.1939). However, if the insurer has not been prejudiced, it may not deny recovery nor may it recover any amount paid on the policy because of a release or settlement. See Chapman v. Hoage, 296 U.S. 526, 530-32, 56 S.Ct. 333, 335-36, 80 L.Ed. 370 (1936) (release of worthless claim); 6A Appleman, supra, § 4093; 16 Couch, supra, § 61:200. The burden rests on the insured to show that in effecting a settlement and executing a release, he did not prejudice the subrogation rights of the insurer. See Weinberg v. Transamerica Insurance Co., 62 N.Y.2d 379, 381-84, 477 N.Y.S.2d 99, 100-02, 465 N.E.2d 819, 820-22 (1984).
 
 
 15
 Since an insurer-subrogee stands in the shoes of its insured, any defenses that are valid against the insured are also applicable against the insurer. See Great American Insurance Co. v. United States, 575 F.2d 1031, 1034 (2d Cir.1978) (Subrogation "is an exclusively derivative remedy which depends upon the claim of the insured and is subject to whatever defenses the tortfeasor has against the insured."); 16 Couch, supra, § 61:212. Where the insured has no right of recovery, the insurer has no enforceable right of subrogation. See Federal Insurance Co., 75 N.Y.2d at 372, 553 N.Y.S.2d at 293, 552 N.E.2d at 872; 16 Couch, supra, § 61:212.
 
 
 16
 Hawaiian argues that its execution of a release in favor of the Charterers did not prejudice Underwriters' right of subrogation because Hawaiian had no right of recovery for freight against Charterers. And there was no right of recovery, Hawaiian continues, because the condition precedent, that A.I.D. must be satisfied that non-arrival of the ship was without fault of the vessel owner, had not been met. The District Court ruled that Hawaiian could not persuasively raise this argument because it had failed to provide A.I.D. with evidence that, according to the Underwriters, might have satisfied the agency that the vessel was lost without fault of the shipowner. As an example of material not supplied to A.I.D., the District Court referred, specifically and exclusively, to the Marine Accident Report on the Disappearance of the S.S. Poet, issued by the U.S. National Transportation Safety Board in 1981.
 
 
 17
 In its motion for reargument, Hawaiian submitted a more detailed affidavit from Kenneth E. Fries, Assistant General Counsel for A.I.D., stating that A.I.D. had indeed been in possession of this particular report, and that the report had contributed to the agency's determination that there was no liability for freight because the agency was not satisfied that the loss of the vessel was without fault of the vessel owner. In rejecting Hawaiian's motion for reargument, the District Court stated that the motion failed because it did not specify matters or controlling decisions that the Court had overlooked. This determination was error. The affidavit indicating that A.I.D. was in possession of the Marine Accident Report and relied upon it in determining that payment of freight was not required mandates a reversal of summary judgment in favor of Underwriters. If, on remand, Underwriters cannot dispute that the condition precedent to liability has not occurred or cannot identify a material document that Hawaiian failed to supply to A.I.D., we believe that Hawaiian will have carried its burden of showing that its release did not prejudice the subrogation rights of Underwriters and summary judgment should be entered in favor of Hawaiian. The insurer has no right to recover its payment under the policy where the insured has released a worthless claim for the obvious reason that the insurer could have sustained no prejudice from such release.
 
 2. Charterers' knowledge
 
 18
 Hawaiian contends that the District Court failed to consider Hawaiian's argument that, even if some right of recovery existed, Charterers' knowledge of Underwriters' payment to Hawaiian served to preserve Underwriters' subrogation rights. If on remand, the District Court finds that Hawaiian cannot meet its burden of proving that it had no claim against Charterers, the Court must then consider Hawaiian's claim that its execution of the release left unimpaired Underwriters' subrogation rights to such a claim.
 
 
 19
 Where a third party obtains a release from an insured with knowledge that the latter has already received payment from the insurer or with information that, reasonably pursued, should give him knowledge of the existence of the insurer's subrogation rights, such a release does not bar the right of subrogation of the insurer. See Hamilton Fire Insurance Co. v. Greger, 246 N.Y. 162, 167-68, 158 N.E. 60 (1927); Ocean Accident & Guarantee Corp. v. Hooker Electrochemical Co., 240 N.Y. 37, 47-48, 50, 147 N.E. 351 (1925); Home Insurance Co., 172 Misc. at 765, 16 N.Y.S.2d at 48; 16 Couch, § 61:201; 6A Appleman, § 4092 at pp. 246-49.
 
 
 20
 Weinberg v. Transamerica Insurance Co., 62 N.Y.2d 379, 477 N.Y.S.2d 99, 465 N.E.2d 819 (1984), relied on by the District Court, is not to the contrary. In Weinberg, the New York Court of Appeals held that a passenger who had executed a general release to a driver in settlement of the passenger's negligence action against the driver, failed to protect the subrogation rights of his insurer and, therefore, was not entitled to recover benefits from the insurer. The Court ruled that the burden was on the insured to prove "by express provision in the release executed to the third party or by necessary implication arising from the circumstances of the execution of the release" that its release did not prejudice the subrogation rights of the insurer. Id. at 381-82, 477 N.Y.S.2d at 100-01, 465 N.E.2d at 820-21. However, the release at issue in Weinberg was given before the insurer had made payment to the insured and thus before the right to subrogation came into being. Moreover, even in this different context, the Court of Appeals specifically reserved the issue of liability where the third party obtaining the release knew or reasonably should have discovered that the insurer would have such subrogation rights upon payment to the insured. Id. at 384 n. 4, 477 N.Y.S.2d at 102 n. 4, 465 N.E.2d at 822.
 
 
 21
 If Hawaiian can show that Charterers had knowledge of Underwriters' payment to Hawaiian at the time of the execution of the release, that would serve to establish the "necessary implication arising from the circumstances of its execution," id. at 382, 477 N.Y.S.2d at 101, 465 N.E.2d at 821, that the release did not operate to prejudice the subrogation rights of the insurer.[4] Underwriters dispute that Charterers had the requisite knowledge to preserve their right of subrogation. If the District Court determines that summary judgment in favor of Hawaiian is not otherwise warranted, this disputed issue of fact must be determined at trial.[5]
 
 3. Waiver of right to subrogation
 
 22
 Hawaiian also argues that the District Court erred in holding that Underwriters did not waive their right to subrogation by their lengthy silence in the face of Hawaiian's request for instructions regarding the proposed release and by their prolonged inaction in pursuing recovery of the freight. The insurer may waive its right to subrogation, either by contract or by conduct inconsistent with the right of subrogation. See Tindall v. Continental Insurance Co., 252 A.D. 47, 297 N.Y.S. 780 (4th Dept.1937); 16 Couch, supra, § 61:15. With regard to Underwriters' failure to issue prompt instructions regarding the release, the District Court rejected Hawaiian's waiver argument on the grounds that Hawaiian's failure to provide Underwriters' counsel with a requested document prior to executing the release excused Underwriters' tardy response. Hawaiian argues that the document it did send had all of the information relevant to an evaluation of the impact of the proposed release. However, Underwriters' counsel was entitled to await the requested document and the District Court properly ruled that the consequent delay in forwarding instructions did not effect a relinquishment of Underwriters' subrogation rights.
 
 
 23
 Hawaiian's argument that Underwriters waived any right of subrogation because they failed to participate with Hawaiian in an effort to pursue recovery from A.I.D. is more substantial. Various acts or omissions on the part of an insurer with regard to litigation or possible litigation by the insured against a third party responsible for the loss have been regarded as establishing a waiver by the insurer of any claims it might otherwise have had to subrogation to the insured's rights against such third party. See generally Annotation, Waiver by Insurance Company of Right to Subrogation, 16 A.L.R.2d 1269 § 3 (1951). A New York court has held that where an insurer who had indemnified his insured knew of the insured's action against the tortfeasor but failed to participate or protect its interest, or to contribute in any way to the prosecution, and where there was no question of double recovery by the insured, the insurer was not entitled to a return from the insured of any of the insurance money paid to him. Sun Insurance Office v. Hohenstein, 128 Misc. 870, 220 N.Y.S. 386 (Mun.Ct.1927). See also Shawnee Fire Insurance Co. v. Cosgrove, 85 Kan. 296, 116 P. 819 (1911), aff'd on reh., 86 Kan. 374, 121 P. 488 (1912) (insurer who indemnified insured but made no effort to intervene in insured's action against tortfeasor or to look after its own interest in known litigation could not hold insured responsible for settling the case as he thought best); cf. Egan v. British & Foreign Marine Insurance Co., 193 Ill. 295, 61 N.E. 1081 (1901) (insurers were entitled to share in insured's recovery from tortfeasor even though they had not aided in prosecution of case against tortfeasor because there was no evidence that insured had requested their involvement in maintenance of the suit). Such cases are distinguishable, however, because they involve the insured's commencement of an action against the tortfeasor whereas the inquiry that Hawaiian pursued before A.I.D. was simply a procedure contemplated under the charter party for recovery of freight in case of non-arrival of the vessel. Moreover, Hawaiian has made no showing that it explicitly requested Underwriters' aid in pursuing the matter before A.I.D. We conclude that the District Court correctly ruled that Underwriters' failure to join in Hawaiian's efforts before A.I.D. did not effect a relinquishment of any theoretical right to subrogation.
 
 4. Failure to prosecute
 
 24
 Dismissal pursuant to Fed.R.Civ.P. 41(b) is a matter committed to the discretion of the District Court. Link v. Wabash Railroad Co., 370 U.S. 626, 633, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734 (1962); Romandette v. Weetabix Co., Inc., 807 F.2d 309, 312 (2d Cir.1986); Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir.1982). While failure to prosecute is not defined in Rule 41(b), we have held that "[i]t can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." Id. at 42. Here the action lay dormant for five and a half years. While this seems a considerable time, mindful that dismissal is "a harsh remedy to be utilized only in extreme situations," Theilmann v. Rutland Hospital, Inc., 455 F.2d 853, 855 (2d Cir.1972), we are unwilling to say that the District Court abused its discretion in failing to dismiss the case for failure to prosecute diligently.
 
 
 25
 Though the District Court did not abuse its discretion in denying the motion for dismissal, the Court must be careful not to compound the prejudice to defendant attendant upon the delay. Underwriters' inactivity for almost six years has more than doubled Hawaiian's potential exposure to interest that has accrued on the principal sum at issue in this suit. In its order the District Court awarded Underwriters a full allowance of interest, including interest for the unusually long period when this suit lay quiescent on the court calendar. If, on remand, this case goes to trial and results in a finding that Hawaiian is liable to the Underwriters, the Court, in an exercise of its equitable powers, should determine the portion of time for which interest should be allowed. See Matlack Coal & Iron Corp. v. New York Quebracho Extract Co., 30 F.2d 275, 278 (2d Cir.1929) (prolonged delay in prosecuting charter party dispute was such as to forbid full allowance of interest).
 
 Conclusion
 
 26
 The judgment in favor of Underwriters is reversed, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 In 1980, A.I.D., an agency of the U.S. Department of State, issued a letter of commitment guaranteeing letters of credit issued by the Morgan Guaranty Trust Company to finance commodities purchased by the Arab Republic of Egypt. The charter of the SS Poet was an eligible transaction under this letter of commitment, and thus A.I.D. was the ultimate obligor for the payment of freight under the charter party
 
 
 [2]
 (2) a notice of arrival will not be required in the event the vessel is lost or unable to proceed to destination after completion of loading because of damage caused by the perils of the sea or other waters, collision, stranding, jettison, wreck, fire from any cause, Act of God, public enemies or pirates, or by arrest or restraint of Princes, rules, or peoples without the fault of the suppliers of the ocean transportation, wars, public disorders, captures or detentions by public authorities in the interest of public safety, provided the vessel Owners or Operators supply evidence satisfactory to the A.I.D. of such disability
 
 
 [3]
 Hawaiian notes that Underwriters were obviously in possession of a copy of the original policy, and counsel could have obtained the policy directly from its client. The peculiar estrangement of Underwriters and their counsel is further evidenced by the fact that along with renewing the request for the original policy, Underwriters' counsel inquired whether Hawaiian planned to submit a claim for freight to Underwriters. The claim, as noted above, had been paid by Underwriters fifteen months previously
 
 
 [4]
 Underwriters did not present this argument in their motion to compel arbitration against Charterers, and that petition was denied on the basis of the release. But Underwriters' failure to raise an appropriate legal argument in a separate action can have no effect on its force when raised here by Hawaiian
 
 
 [5]
 Hawaiian need prove only that Charterers knew that Hawaiian had been indemnified by its insurer; it need not prove Charterers' knowledge with regard to the execution of a formal subrogation instrument in favor of Underwriters. In fact, Underwriters did not submit a formal subrogation instrument to Hawaiian until sixteen months after indemnifying Hawaiian and two months after Hawaiian had executed the release in favor of Charterers